[Civ. No. 19435.   First Dist., Div. Two.   June 20, 1961.]

IRENE MAY ZIEGLER, Appellant, v. SANTA CRUZ CITY
HIGH SCHOOL DISTRICT et al., Respondents.

Donald O. May, J. Frank Murphy and Eugene J. Adams for Appellant.

Lucas, Wyckoff & Miller, Stephen Wyckoff, Donald R. Haile and Lucas, Wyckoff, Miller, Stanley, Scott & Bennett for Respondents.

SHOEMAKER, J.—This is an appeal by the plaintiff in a wrongful death action from a verdict and judgment for defendants. Plaintiff Irene Ziegler brought this action to recover damages for the death of her 13½-year-old son, whose death resulted from injuries sustained when he fell from a landing outside a school auditorium.

This is the second trial of the case. Plaintiff originally brought the action alleging that defendants Santa Cruz City High School District and Santa Cruz City Elementary School District had negligently maintained, controlled and supervised the school premises and the students thereon and had also allowed the premises to remain in a dangerous and unsafe condition. Following a trial on the merits, the court granted a nonsuit in favor of defendants, and plaintiff appealed therefrom. (*Ziegler* v. *Santa Cruz City High Sch. Dist.* (1959), 168 Cal.App.2d 277 [335 P.2d 709].) The nonsuit was held proper as to plaintiff's cause of action under Government Code, section 53051 (which provides for liability of local agencies for the defective or dangerous condition of public property). However, the judgment of nonsuit was reversed as to the issue of the alleged negligent supervision, and the case was remanded for retrial as to this issue.

The evidence produced at the second trial establishes that the accident occurred when Leonard, plaintiff's son, came out of the school auditorium where a dance was being held. The students who wished to leave the dance had just been given permission to depart, so Leonard and others left the auditorium through a hallway opening on a rear stairway which descended to the school playground. At the rear stairway landing Leonard stopped and sat on the landing railing in such a manner as to have one foot resting on the landing and the other foot in the air. When Leonard had been in this position for approximately 20 to 30 seconds, another student suddenly came out of the exit and threw his arms out toward Leonard. The facts are not clear as to whether Leonard was merely startled and "flinched back" or whether he was actually pushed from the railing. In any event, Leonard fell backwards off the railing, dropping 12 or 13 feet to a concrete landing below, receiving the injuries which caused his death.

Appellant's first contention is that the trial court erred in instructing the jury upon the doctrine of assumption of risk. Appellant does not attack the correctness of these instructions but contends the evidence was insufficient to justify giving the

instructions at all.* Appellant points out that the elements of the defense of assumption of risk are the person in question's knowledge and appreciation of the danger involved and his voluntary acceptance of the risk. (*Perry* v. *First Corporation* (1959), 167 Cal.App.2d 359, 366 [334 P.2d 299]; see Rest., Torts, § 893.) ▉ It is necessary to this defense that the person have *actual* knowledge of the danger, and it is not enough that, in the exercise of due care, he should have known. (*Prescott* v. *Ralphs Grocery Co.* (1954), 42 Cal.2d 158, 162 [265 P.2d 904].) Appellant then asserts that the facts in the case at bar are insufficient to support a finding that decedent had any knowledge or appreciation of the danger involved and that the court erred in instructing the jury on assumption of risk.

▉ Although appellant's contention is sound in alleging that actual, rather than constructive, knowledge is required under the defense of assumption of risk, the rule is also well established that such actual knowledge may be inferred from the circumstances. (*Gomes* v. *Byrne* (1959), 51 Cal.2d 418, 421 [333 P.2d 754]; *Sheppard* v. *City of Los Angeles* (1959), 172 Cal.App.2d 338, 342 [342 P.2d 282]; *Ching Yee* v. *Dy Foon* (1956), 143 Cal.App.2d 129, 138-139 [299 P.2d 668].) ▉ It is also settled that it is not error to give an instruction on a theory advanced by a party if there is any evidence at all upon which to base it, even though this evidence may be slight or inconclusive. (*Washington* v. *City & County of San Francisco* (1954), 123 Cal.App.2d 235, 238 [266 P.2d 828]; *Brandes* v. *Rucker-Fuller Desk Co.* (1929), 102 Cal.App. 221, 227 [282 P. 1009].) The question thus presented is whether the record contains any evidence, including infer-

---

*It may be noted at this point that respondents are of the opinion that appellant waived her right to object to the instructions on assumption of risk because of a stipulation on her part that assumption of risk would be an issue at the trial. This position does not appear to be well taken. Respondents point out that appellant, in a pretrial stipulation, denied all the affirmative defenses in respondents' answer and stipulated that they would be in issue at the trial. Assumption of risk was among the defenses set forth in respondents' answer. Respondents thus argue that appellant should now be barred from objecting to the giving of instructions on a defense which she stipulated would be in issue.

A party must be given a wide opportunity to plead all theories which he hopes will ultimately find support in the evidence presented at the trial. His right to plead a specific defense should not, however, automatically entitle him to pertinent instructions should it ultimately develop that the defense pleaded finds no support in the evidence. Neither should the opposing party be barred from objecting to such an instruction merely because he stipulated prior to trial that such a defense would be in issue.

ences to be drawn from the circumstances, that Leonard knew and appreciated the danger of sitting upon the handrail in the manner described above.

In the case at bar, Leonard voluntarily chose to sit upon the railing despite the backdrop of 12 or 13 feet to a concrete surface below. Leonard was 13½ years of age at the time of the accident, and both his aunt and his mother testified to the fact that he was a bright and intelligent child. His teacher also testified that he was above average in his work. It would seem that from these circumstances alone the jury could infer that Leonard had actual knowledge of the danger involved when he sat upon the railing. Furthermore, there was testimony by a classmate of Leonard's that the students had been warned by teachers not to sit upon the railings because to do so would be dangerous. Certainly the jury would be entitled to infer that Leonard was also aware of these warnings. Under these circumstances there was at least "slight" evidence that Leonard had actual knowledge of the danger of sitting upon the railing.

Although appellant argues that knowledge of the *specific* danger is necessary, a contention with which we do not agree, it appears that this requirement was also met. The obvious, and almost the sole, danger in sitting upon the railing would be the possibility of falling to the concrete surface below. Since approximately 500 students were in attendance at the school dance, and since some of these students had just been dismissed therefrom, Leonard must certainly have had actual knowledge that many of these students would be coming out the exit door onto the landing and that he could easily be jostled from the railing. The specific cause of Leonard's fall in the instant case was the act of a student who either startled him or actually pushed him from the railing. Certainly it can be inferred that Leonard was aware of the propensity of his classmates to indulge in horseplay, particularly in view of the fact that the principal of Leonard's school testified that horseplay, including scuffling, presented a definite supervisorial problem, especially with children of the junior high age. Just prior to the occurrence of the accident Leonard had in fact been poking this very student in the ribs while on the dance floor, and had thus been indulging in the very type of horseplay which ultimately resulted in his fall from the railing. Under these circumstances, it is proper to infer that Leonard had actual knowledge of the specific danger in sitting on the railing.

Appellant argues, however, that Leonard's acceptance of the risk was not "voluntary" since Leonard was required under section 12101 of the Education Code to attend school. Appellant relies upon *Finnegan* v. *Royal Realty Co.* (1950), 35 Cal.2d 409 [218 P.2d 17], where the court stated that workmen could not be said to have voluntarily assumed the risk of unsafe working conditions since their only choice was to put up with these conditions or lose their livelihood. This point merits little discussion. ▮ Suffice it to say that by no stretch of the imagination can the duty to attend school be said to include the obligation to sit upon railings which abut upon 12-foot drops. The trial court did not err in instructing the jury upon the defense of assumption of risk.

▮ Appellant's second and final ground for reversal is that the trial court erred in instructing the jury that a school district would not be liable for injuries caused by the use of a stair railing when the particular use was not one for which the railing had been designed or intended and when the school district, in the exercise of ordinary prudence, could not reasonably have anticipated this particular use. This instruction is taken from the last paragraph of BAJI 219-F (Cal. Jury Instns., Civ., vol. 2, pp. 877-879), and was designed to be given where "condition negligence" rather than "conduct negligence" is in issue (see pp. 852-853).

Upon oral argument appellant concedes that were it not for the fact that the court instructed the jury as to the doctrine of assumption of risk it would not be urging the fallacy of this instruction, for even if it were error to so instruct, it could not be said to have misled the jury where all other instructions were free of error. Inasmuch as we have concluded that the assumption of risk instructions were correct, the situation conceded by appellant has not changed. While the subject matter of this instruction was not in issue in view of the ruling on the prior appeal and to instruct thereon was error, nevertheless the instruction did not mislead the jury and did not bring about a miscarriage of justice entitling the appellant to a reversal. Under this instruction the jury was told that they could not find respondents liable if they found that Leonard's use of the railing was not one for which it had been designed or intended *and* that respondents could not reasonably have anticipated this use. The evidence presented at the trial conclusively established that respondents had actual knowledge that students had been sitting upon and leaning against the railing in question. Mr. Miller, the principal of

respondent school, testified that he had seen students indulging in this practice, and that he had personally observed the students doing this as often as two or three times a month. In view of this completely uncontradicted testimony establishing that respondents had actual knowledge that students sat upon the railing in question, it would seem clear that the jury must have found that Leonard's use of the railing was foreseeable by respondents.     Where the court gives an erroneous instruction which is based on a supposed fact and the evidence establishes without conflict that this fact does not exist, no harm can be said to have resulted from the error. (*Robinson* v. *Western Pacific R. R. Co.* (1874), 48 Cal. 409, 424-425; *Fidelity etc. Co.* v. *Paraffine Paint Co.* (1922), 188 Cal. 184, 196 [204 P. 1076].) Since the erroneous portion of this instruction was contingent upon a finding that respondents could not reasonably have foreseen the use of the railing, it cannot be assumed that appellant suffered prejudice from the giving of this instruction.

Judgment affirmed.

Kaufman, P. J., and Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 16, 1961.