[Civ. No. 37896. Second Dist., Div. Three. Apr. 28, 1972.]

WALTER C. RICHARDSON et al., Plaintiffs and Respondents, v. EMPLOYERS LIABILITY ASSURANCE CORPORATION, LTD., Defendant and Appellant.

234

**COUNSEL**

Shield & Smith and Theodore P. Shield for Defendant and Appellant.

Sanford M. Gage and Leonard Sacks for Plaintiffs and Respondents.

**OPINION**

**SCHWEITZER, J.**—Defendant, Employers Liability Assurance Corporation, Ltd., appeals from a judgment for $75,000 and $100,000 in favor of plaintiffs, Walter C. and Florence White Richardson respectively, entered on general jury verdicts. The judgment is based upon the refusal of Employers, insurer, to settle *in good faith*, without arbitration, the claim of the Richardsons, Employers' insured, for the policy limits of $10,000 apiece under the uninsured motorist provisions of the policy.

*Facts*

On January 30, 1968, Michael Squalls drove an automobile through a boulevard stop sign at an intersection in Los Angeles and struck a vehicle driven by Carmella Cook. The Cook vehicle was forced into the Richardson car. The Richardson car, driven by Walter Richardson, went out of control and struck an adjoining gas station. Both Richardsons sustained very severe injuries and their car was heavily damaged.

The accident was reported within a week to Employers by the agent who had sold the Richardsons their insurance policy. In his report the agent stated that Richardson had told him that Squalls had no insurance. An investigation of the accident for Employers was promptly begun. It was completed by March 21, 1968. It indicated that the three-car accident had been caused solely by the negligence of Squalls and that Squalls represented that he was uninsured at the time of the accident.[1] About this time the Richardsons' attorney wrote the local office of Employers and stated that Squalls was uninsured at the time of the accident.

The home office of Employers would not accept these conclusions. It took the position that uninsured motorist claims should be assumed and paid "only as a last resort," that further investigation should be made of whether Squalls was insured and of possible liability on the part of either Carmella Cook, who was insured, or of Employers' own insured, Walter Richardson, and that upon the completion of such investigation the Richardson claim should be immediately referred to Employers' local counsel. The further investigation and the reference to counsel were made. Toward the end of April 1968 the local office of Employers reported to the home office that further investigation indicated "a valid uninsured motorist claim."

The home office immediately rejected this conclusion under its "last resort" policy and suggested that the Richardsons' attorney be advised "that this is not a case of uninsured motorist" and that he should sue Carmella Cook. This advice was given to the attorney by the local office of Employers.

By letter dated May 28 the Richardsons' attorney notified Employers that since Mrs. Richardson's medical expenses exceeded $10,000 and Mr. Richardson's totaled over $3,000, the settlement demand for each was $10,000, and that if this demand was not met by June 12, they would initiate arbitration proceedings under the policy. The settlement demand

---

[1]On the basis of this investigation Employers posted reserves for the full policy limits. (Ex. 2, p. 28; Ex. 21.)

was refused and the Richardsons' attorney took the claim against Employers to arbitration on June 12.[2]

By letter dated July 31 the Richardsons' attorney renewed his demand that Employers pay the policy limits ($10,000 apiece) under the uninsured motorist coverage, threatened litigation if payment was not made, and stated that the settlement offer would remain open only until August 31; the date was later extended to September 23. On August 8 Richardsons' attorney sent Employers a copy of Mrs. Richardson's hospital bill in the amount of $13,616.47.

By memorandum dated September 11 the local office of Employers advised the home office that "our counsel thinks plaintiff's theory of bad faith may be a good one."

By letter dated September 17 counsel for Employers advised counsel for the Richardsons that Employers could not accede to the settlement demand because it had no proof that Squalls was uninsured at the time of the accident. Richardsons' attorney furnished Employers with a requisite DMV certificate of noninsurance and on September 27 the local office of Employers recommended to the home office that the claim be settled for the policy limits. The home office rejected this recommendation on the baseless ground that negligence on the part of Cook contributed to the accident.

An arbitration hearing was held on October 7; the Richardsons presented a full and documented case on both liability and damages; Employers presented no evidence. On November 6 the arbitrator awarded the Richardsons the full policy limits. Notwithstanding this fact, the home office was still unwilling to pay the award in full; it authorized the local office "to make best possible settlement up to $20,000." The Richardsons' attorney thereupon initiated proceedings to have the award judicially confirmed; a judgment was obtained on January 24, 1969. Employers made full payment of the award on or about February 6, 1969—a little over a year after the accident.[3]

The foregoing facts disclose the Employers' investigation of the circumstances of the accident was essentially completed by the end of March 1968, some two months after the accident.

---

[2]The uninsured motorist endorsement portion of the insurance policy provided that the existence and the amount of the liability of Employers thereunder was to be determined by agreement between Employers and its insured and, if they failed to agree, by arbitration. (Ex. 1.)

[3]Employers prepared drafts in full payment of the award initially on December 3, 1968, but these were refused by the Richardsons' attorney because they contained a statement that they were "in settlement of any and all claims."

Employers' local claims supervisor, who supervised the investigation of the claim, testified that his opinion was that a full settlement of the claim ($20,000) was justified. An attorney who specialized in personal injury litigation testified that the Richardsons' case was one "of clear liability under the uninsured motorist's protection" and that the reasonable settlement value for Mrs. Richardson's injuries was $30,000 to $50,000 and that for Mr. Richardson's injuries was $60,000 to $80,000.

The actual damages occasioned the Richardsons by the failure of Employers to settle their claims without arbitration, without allowance of interest for late payment, amounted to $1,996.93 in increased contingent attorney's fees and their share of the cost of the arbitration proceeding.

### The Nature of the Action

■ In every insurance policy there is implied by law a covenant of good faith and fair dealing. (See *Comunale* v. *Traders & General Ins. Co.,* 50 Cal.2d 654, 658 [328 P.2d 198]; *Fletcher* v. *Western National Life Ins. Co.,* 10 Cal.App.3d 376, 401 [89 Cal.Rptr. 78], hg. den.) This implied obligation requires an insurer to deal in good faith and fairly with its insured in handling an insured's claim against it. Here, Employers deliberately, willfully and in bad faith withheld payment of the Richardson claim months after it knew the claim to be completely valid; it forced an arbitration hearing on a claim against which it already knew that it had no defense; even after the award was made, it instructed its local office to attempt "to make the best possible settlement," and forced plaintiffs to resort to litigation to have the award judicially confirmed. This conduct toward its own insured was unconscionable, and constituted a tortious breach of contract. (See *Comunale Traders & General Ins. Co., supra,* 50 Cal.2d at p. 663; *Crisci* v. *Security Ins. Co.,* 66 Cal.2d 425, 432-433 [58 Cal.Rptr. 13, 426 P.2d 173].) The duty violated—that of dealing fairly and in good faith with the other party to a contract of insurance—is a duty imposed by law, not one arising from the terms of the contract itself. In other words, this duty of dealing fairly and in good faith is nonconsensual in origin rather than consensual. Breach of this duty is a tort. (See *In re Bongfeldt,* 22 Cal.App.3d 465, 468-469 [99 Cal.Rptr. 428]; *Laczko* v. *Jules Meyers, Inc.,* 276 Cal.App.2d 293, 295 [80 Cal.Rptr. 798].)

### Jury Instructions

■ Employers contends that certain instructions misled the jury as to the nature of the action and set forth improper items of damages.

1. *Nature of Action.* Employers refers to modified BAJI instruction No. 2.60, numbered by the court as 14, on the burden of proof and to two instructions requested by the Richardsons (plaintiffs' instructions 4 and 6), numbered by the court as 17 and 18.[4] The word "injuries" appears twice in BAJI No. 2.60; since this action is not predicated upon personal injuries but on a tortious breach of contract, the reference to injuries was not proper. We note that the instruction was discussed in chambers and that defense counsel confined his objection to the provisions in the instruction relating to good faith. As we have pointed out, good faith was a proper issue and the instruction properly referred thereto. Apparently defense counsel considered the reference to injuries as insignificant; we agree and conclude that neither the jury was misled nor the defendant prejudiced by the reference therein to injuries.

■ Instructions 17 and 18 are based on *Crisci, supra,* 66 Cal.2d 425, and *Comunale, supra,* 50 Cal.2d 654, and each instruction was objected to by defense counsel on the ground that each applies to third party situations, where an insured is exposed to liability in excess of his policy limits because an insurer violates its implied obligation to act in good faith in protecting its insured. Although we hold that the insurer has an analogous duty in an uninsured motorist case, such as that presented here, we agree with defense counsel that the instructions were inappropriate. However, since the contents thereof contained a correct statement of law in referring generally to the applicable principle of good faith, we conclude that the jury was not misled thereby and that defendant suffered no prejudice as a result.

---

[4]As given, modified BAJI No. 2.60 (5th ed. 1969), in relevant part, was:

"In this action, the plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues:

"1. That the defendant, Employers Liability Insurance Corporation, Ltd., did not act in good faith.

"2. That such conduct was the proximate cause of plaintiffs' injuries and damages, if any.

"3. The nature and extent of such injuries.

"4. The amount of damages."

As given No. 17 was:

"There is an implied covenant of good faith and fair dealing in every contract of insurance that neither party will do anything which will injure the right of the other party to receive the benefits of the agreement.

"In the case of insurance contracts, such as existed in this case, the implied obligation of good faith and fair dealing requires the insurer to accept reasonable settlements in an appropriate case."

As given No. 18 was:

"In determining whether the insurer has acted in good faith in refusing to settle plaintiffs' claim for bodily injury, the test is whether a prudent insurer without policy limits would have accepted the settlement offer."

2. *Damages.* Pertinent parts of the court's instructions on damages are quoted in the sequence given:

"Compensatory damages . . . shall include [BAJI 14.00 as modified] . . . [r]easonable compensation to plaintiffs for additional attorney's fees, costs . . . and similar additional expenses . . . [BAJI 14.10 as modified], . . . [i]nterest . . . [BAJI 14.22] . . . [r]easonable compensation . . . for any fears, anxiety and other mental and emotional distress . . . [BAJI 14.13] . . . . [Y]ou should compensate [them] for loss or harm which is reasonably certain to be suffered by [them] in the future as a proximate result of the injury in question." [BAJI 14.60.]

■ BAJI No. 14.60, as it relates to future loss or harm, should not have been given; there was no evidence of such damage. However, this instruction was requested in its entirety by defense counsel; it was therefore invited error and Employers cannot complain with reference thereto on appeal. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 243, p. 3057.)

■ The serious question raised relates to BAJI No. 14.13, requested by plaintiffs, insofar as it allowed the jury to include in its award compensation "for any . . . fears, anxiety, and other mental and emotional distress. . . ." The only evidence relating thereto was testimony by Mrs. Richardson that as a result of defendant's conduct, various creditors pressed the Richardsons about unpaid bills, and that at times they had to borrow funds to pay taxicab fares and parking expense in obtaining medical treatment for their injuries. To support an award of damages for anxiety and emotional distress, there must be evidence of "severe emotional distress" (*Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d at pp. 396-397), or as indicated by *Crisci, supra,* 66 Cal.2d at pp. 433-434, there must be evidence of "substantial damages" therefrom. The evidence in this case does not meet these standards. The court erred in giving the instruction. The error was prejudicial because it cannot be determined from the general verdicts what, if anything, was awarded to plaintiffs as a result of the instruction. It would appear from the size of each verdict that some award was made for these items of damage.

We cannot say that defendant acceded to this instruction. It was discussed in chambers; defense counsel stated several times that he objected to the instruction. ■ Instructions requested by an adverse party "are deemed to have been excepted to" (Code Civ. Proc., § 647) even though the complaining party made no objection thereto. (*Rivera* v. *Parma,* 54 Cal.2d 313, 316 [5 Cal.Rptr. 665, 353 P.2d 273].)

### The Admissibility of Certain Evidence

Employers repeatedly proffered a stipulation that the injuries and damages suffered by the Richardsons in the accident warranted payment by Employers to them of the policy limits. On appeal defendant contends that in view of this offer it was unnecessary and prejudicially improper for the trial court to admit medical and hospital records and bills of the Richardsons, photographs of each after their injuries and of their damaged car, and the testimony of the expert witness as to the reasonable settlement value of their claims. We do not agree.

All of the challenged documentary evidence came from Employers' file. In deciding the basic issue of the case—whether Employers acted in good faith in refusing to settle the Richardson claim, without arbitration, for $20,000—the jury was entitled to be advised as to exactly what information was in defendant's file, aside from the privileged communications with Employers' counsel. How else could they have properly determined whether Employers acted fairly and in good faith in its handling of the claim?

Furthermore the evidence of the expert witness, an attorney, as to the reasonable settlement value of the claim was clearly relevant to the good faith issue. If this value had approximated the policy limits, the jury might very well have concluded that Employers' refusal to settle the claim for the policy limits without arbitration, was in fact a good faith refusal.

### Prejudicial Misconduct of Counsel

During the afternoon session of the second day of trial, outside the presence of the jury, counsel for Employers moved for a mistrial on the ground that plaintiffs' counsel had exposed to jurors a Xerox copy of an article with headlines:

> "Didn't Settle in Policy Limits;
> OK Mental Suffering Award."

Defense counsel represented that the article was on the counsel table, in front of his adversary's seat prior to the court reconvening for the afternoon session, while the jurors were returning to the jury room following the noon recess, and remained on the table after the jurors were in the jury box. These facts were not denied by counsel for plaintiffs; he denied any intentional wrongdoing, stating that it was only one of the numerous documents and files he had on the counsel table, and that "the document to which he [defense counsel] refers is a case citation which I have along with other case citations to discuss jury instructions . . . and other lead-

ing points." He later stated that it was an article from a legal newspaper on the *Crisci* v. *Security Insurance* case.

Under the court's supervision, with the consent and assistance of counsel, physical observations were noted and photographs were taken.[5] The physical observations recorded indicate that each letter of the headline was capitalized; the first letter of each word, except for the preposition "in," was three-fourths of an inch in height; the remaining letters were one-half inch in height; the body of the article was in regular type, approximately one-sixteenth inch in height; the headline was 80 to 88 inches from the front of the jury box, 112½ inches from the back of the seats in the front row of the jury box (it was estimated that jurors' eyes would be one foot closer), 124 inches from "eye position" in the second row, and 127½ inches from the bar. The photographs indicate that chairs were placed immediately in front of the bar and that jurors, returning from the noon recess to the jury room, would enter through a gate in the bar, pass between the chairs in front of the bar and the chair occupied by counsel for plaintiffs; no measurement was taken of the distance from this passageway to the article. A photograph taken from this passageway indicates to us that the headline was clearly legible.

Defense counsel stated that he could read the headlines from the rear row of the jury box; counsel for plaintiffs took issue with this assertion; each counsel conceded that the visual acuity of the jurors would vary. The record does not indicate that the trial judge left the bench to personally test the legibility of the headlines from locations that had been occupied or traversed by jurors.

After the measurements were made and the photographs taken, counsel for defendant moved that the jurors be individually examined as to whether they had read the headline; this motion and the motion for mistrial were denied. The jury was then returned to the courtroom and at the request of counsel for plaintiffs the court gave the following admonition: "Ladies and gentlemen of the jury, you are instructed that you should not consider

---

[5]The photographs were not received in evidence but were marked only as a "Court's Exhibit for Identification," apparently due to an assumption that the jury would be entitled to see all exhibits received in evidence. Since counsel and the trial judge personally observed the document, its location and the physical layout of the courtroom, the photographs served no useful purpose for the trial proceedings. Since the only conceivable purpose for the photographs was to record these facts for possible appellate review of the incident, we assume that counsel intended that they be deemed a part of the record for our inspection. This assumption finds support in respondents' brief on appeal; counsel relies on the photographs in support of his argument. Under the circumstances we feel justified in overlooking the technicality and considering the photographs as being competent evidence on the issue of counsel's misconduct.

as evidence any statement of counsel made during this trial, nor any document upon the counsel table unless such statement was made as an admission or stipulation conceding the existence of a fact or facts or such document or documents have been introduced into evidence."

As heretofore stated, counsel for plaintiffs stated he had the article on the table for use in discussing jury instructions "and other leading points." This excuse is incredible. *Crisci* was decided over three years before trial of this action. The decision covers eight pages in the official reports. The article appears on one sheet only; although not in the record, it would appear to be only a synopsis at most, a poor source of information for the purposes advanced by counsel. We cannot help but conclude that the article with prominent headlines was exposed for the purpose of influencing the jury. No one knows whether any jurors saw the headlines, and if so, what, if any effect they had on the jury in its deliberations. It would appear from the size of the verdicts that the headlines might have influenced the jury. Under such circumstances we hold that the trial court abused its discretion in not granting defendant's motion for mistrial.

We conclude that the combination of this misconduct and the erroneous inclusion of the portion of the instruction authorizing an award for "fears, anxiety and other mental and emotional distress" constituted prejudicial error and requires a reversal of the judgment.

Although unnecessary for our opinion, for the guidance of the court and counsel on retrial we comment briefly on defendant's remaining contentions.

### Punitive Damages

■ Defendant contends that this is an action for damages for breach of contract and that puniitve damages are not authorized. As we have already pointed out, this is an erroneous assumption; the suit rests upon the tortious breach by the insurer of an obligation imposed by law, to deal fairly and in good faith with its own insured. An insurance policy is a contract of adhesion; and, therefore, the reasonable expectations of the weaker party, the insured, must be taken into account. (See *Gray* v. *Zurich Insurance Co.*, 65 Cal.2d 263, 269-271 [54 Cal.Rptr. 104, 419 P.2d 168].) Limited monetary protection of the insured from bodily injury occasioned by the negligence of an owner or operator of an uninsured vehicle is a mandatory provision in all policies of motor vehicle bodily injury liability insurance issued or delivered in this state. (Ins. Code, § 11580.2.) A reasonable expectation of the insured under such protection is that his claim will be handled by the insurer promptly, fairly and in good faith.

This expectation was not realized in this case. Unlike the *Crisci* situation, however, the result of the insurer's breach of this duty of dealing with its insured fairly and in good faith was not to make the protection of the policy inadequate (it already was), but was instead to oppress and harass the insured needlessly and unjustifiably by refusing payment of an indisputably valid claim for the policy limits without arbitration and without judicial confirmation; it thereby created a needless uncertainty as to its ultimate payment and deferred payment from a few months after the accident to over a year thereafter.

Civil Code section 3294 provides that "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." The fact that the conduct constituting the tort also involves the breach of a covenant, *implied by law* in the insurance policy, does not prevent the recovery of punitive damages under section 3294 by the insured from the insurer. (See *Eads* v. *Marks,* 39 Cal.2d 807, 811 [249 P.2d 257]; *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d at p. 400; *Wetherbee* v. *United Insurance Co. of America,* 265 Cal.App.2d 921, 927-929 [71 Cal.Rptr. 764], hg. den.; *Sharp* v. *Automobile Club of So. Cal.,* 225 Cal.App.2d 648, 651-653 [37 Cal.Rptr. 585], hg. den.)

Employers argues that an award of punitive damages was not justified because there was no evidence of fraud, malice or oppression, as required by section 3294. Although bad faith conduct, involving deceit, has often been regarded as fraudulent (see *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d at p. 405), we will limit our consideration of the basis for these damages to malice and oppression, the only grounds for an award of punitive damages that were mentioned in the instructions.

Actual malice must be shown in order for punitive damages to be awarded, but this malice, including malicious intent, may be inferred from the circumstances of the case. (See *Walton* v. *Anderson,* 6 Cal.App.3d 1003, 1009-1010 [86 Cal.Rptr. 345], hg. den.; *Parrott* v. *Bank of America,* 97 Cal.App.2d 14, 24-25 [217 P.2d 89, 35 A.L.R.2d 263], hg. den.) Certainly, a motive and willingness on the part of the home office of Employers to vex and annoy the Richardsons (see *Haun* v. *Hyman,* 223 Cal.App.2d 615, 620 [36 Cal.Rptr. 84]; BAJI (5th ed. 1969) No. 14.71) by forcing the claim into arbitration when the persons involved with the claim knew that it was completely valid, was established. We hold, therefore, that malice was proved.

We further hold that oppression on the part of Employers was also proved. ■■ "Oppression" has a well established meaning. (See *Fletcher* v. *Western National Life Ins. Co. supra,* 10 Cal.App.3d at p. 405.) It means subjecting a person to cruel and unjust hardship in conscious disregard of his rights. (See *Roth* v. *Shell Oil Co.,* 185 Cal.App.2d 676, 682 [8 Cal.Rptr. 514], hg. den.)

Employers contends that the award of punitive damages was excessive. Since the case must be retried, we refrain from expressing our approval or disapproval of the size of the verdicts. It is clear that the bulk thereof was exemplary in nature, but as we have indicated, it is reasonable to believe that an undetermined portion thereof resulted from the erroneous instruction and the misconduct of counsel. We do note a few principles for guidance on retrial.

Evidence of Employers' wealth was properly admitted. (2 Witkin, Summary of Cal. Law (1960) Torts, § 400, p. 1607.) ■■ Juries have wide discretion in determining an award of punitive damages. (*Scott* v. *Times-Mirror Co.,* 181 Cal. 345, 367 [184 P. 672, 12 A.L.R. 1007].) There is no fixed ratio by which to determine the proper proportion between compensatory and punitive damages. (*Finney* v. *Lockhart,* 35 Cal.2d 161, 164 [217 P.2d 19]; *Wetherbee* v. *United Ins. Co. of America,* 18 Cal.App.3d 266, 270-272 [95 Cal.Rptr. 678]; Prosser, Law of Torts (4th ed. 1971) p. 14.)

Liability of defendant was clearly established and was unaffected by the errors committed below. No good cause appears to set aside the verdict on such issue. The errors committed related solely to the issue of damages. This court can reverse the judgment and remand the cause for a new trial on limited issues. (*Brewer* v. *Second Baptist Church,* 32 Cal.2d 791, 801-802 [197 P.2d 713]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 559, pp. 4498-4499.)

The judgment is reversed and the cause is remanded for a new trial solely upon the issue of the amount of compensatory and exemplary damages, with directions to the trial court to render judgment in favor of plaintiffs for the amount of damages so found upon a determination of that issue.

Ford, P. J., concurred.

**COBEY, J.**—I dissent. I would affirm the judgment. With all due deference to my colleagues of the majority, the court's opinion in this case is a classic example of making a mountain out of a molehill—the molehill being

mental suffering or mental distress. A specific sum of money for this element of damages was never sought nor mentioned in this case and counsel for the Richardsons mentioned such damages only once in his lengthy arguments to the jury.[1]

I believe the majority is wrong in holding that such damages should not have been considered by the jury and also in their further holding that the misconduct of counsel for the Richardsons constituted reversible error.

The majority hold that the giving of the modified BAJI No. 14.13 instruction[2] constitutes reversible error because, in their words, there was neither evidence of "severe emotional distress" nor evidence of "substantial damages" of this character. Their reliance on the cases of *Fletcher* v. *Western National Life Ins. Co.,* 10 Cal.App.3d 376 [89 Cal.Rptr. 78], and *Crisci* v. *Security Ins. Co.,* 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173], for these supposed requirements is misplaced. In *Fletcher* liability was based *solely* upon the distinct and separate tort of intentional infliction of emotional distress (pp. 384-385) rather than upon, as here, the breach of an insurer's duty of good faith to its own insured. In *Crisci* $25,000 of the $116,000 damage award was expressly for mental suffering (p. 427). Here,

---

[1]In his opening argument to the jury counsel for the Richardsons said:

"On top of all that she [Florence Richardson] had been put through, and was being put through daily in this case, of having the persons, the creditors call, the doctors ask her for payment, the various people along the time asking her to do something more than she could; and here continuously the consequences, on top of her injury of being unable to respond to their requests except to say she had this policy and the company was supposed to pay and they wouldn't. I think that you can fully appreciate what the consequences are on somebody lying in a hospital bed already disturbed, having this on top of that.

"His Honor will instruct you as far as the measure of such damages with respect to the anxiety, the mental distress, the problem that this would cause, and for you to determine what evaluation this type of injury would be appropriate.

"Similarly with Walter Richardson. . . . [A]nd that to add to this, to the additional indignity that was added by the company to put him in the position of receiving calls from people to pay bills that he couldn't pay because the company wouldn't make their payment to him that they were obligated to. I think you can evaluate with the Court's instructions on mental distress and on the nature of the injuries that he sustained what would be an appropriate evaluation for his claim."

[2]This instruction reads:

"Reasonable compensation for any . . . fears, anxiety and other mental and emotional distress suffered by the plaintiff[s] and of which [their] injury was a proximate cause. . . .

"No definite standard . . . is prescribed by law by which to fix reasonable compensation for pain and suffering. Nor is the opinion of any witness required as to the amount of such reasonable compensation. Furthermore, the argument of counsel as to the amount of damages is not evidence of reasonable compensation. In making an award for pain and suffering you shall exercise your authority with calm and reasonable judgment and the damages you fix shall be just and reasonable in the light of the evidence."

as the majority concedes, we do not know whether the jury's verdicts actually included *anything* for this element of damages.

Furthermore, in the record before us there is some evidence, albeit slight, of mental distress upon the part of the Richardsons over unpaid bills and their borrowing funds for transportation incidental to the medical treatment of their injuries. A wronged person is entitled to recover *all* the detriment proximately caused him (see Civ. Code, § 3333), and a party is entitled to have a requested instruction given if there is *any* evidence upon which to base it, even though that evidence be slight or inconclusive. (See *Ziegler* v. *Santa Cruz etc. School Dist.*, 193 Cal.App.2d 200, 203 [13 Cal. Rptr. 912], hg. den.)

In any event, the giving of the modified form of BAJI No. 14.13 cannot be reversible error. As just indicated, in view of the general nature of the verdicts, it is impossible for any of us to determine whether this instruction had *any* effect on the verdicts. Therefore, we cannot say that it is reasonably probable that a result more favorable to Employers would have been reached in the absence of this supposed error. This being the case, the supposed error cannot be reversible error. (See Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243]; *Smith* v. *Sugich Co.*, 179 Cal.App.2d 299, 313 [3 Cal.Rptr. 718].)

As already indicated, I also disagree with the majority's position that it was reversible error for the trial court to deny Employers' motion for a mistrial. The motion was made because at one point in the trial counsel for the Richardsons had on the counsel table, exposed to view, along with other things, a copy of an article from a legal newspaper, headlined "DIDN'T SETTLE IN POLICY LIMITS; OK MENTAL SUFFERING AWARD." When misconduct on the part of counsel occurs during a trial, the trial court must decide whether its possibly prejudicial effect upon the jury can be cured by the immediate giving of a corrective instruction. The trial court so decided in this case after a lengthy and somewhat elaborate investigation of the attendant circumstances. Furthermore, it denied a motion for new trial based partially upon this misconduct.

It has been said that a trial court is in a much better position than an appellate court to determine whether a verdict has been influenced by misconduct of counsel and that its conclusion of nonprejudice should not be disturbed unless it is plainly wrong. (*Lafargue* v. *United Railroads*, 183 Cal. 720, 724 [192 P. 538]; see also 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 164, p. 2984.)

I find no abuse of discretion in the way the trial court handled the misconduct of counsel in this case. In any event, again, if the court erred, such error cannot be reversible error for the reasons I have already given.

I view the combined damage award in this case as consisting of $2,500 in compensatory damages[3] and $172,500 in punitive damages. I do not regard this award of punitive damages as excessive in view of Employers' gross wealth of over $285,000,000 and its unconscionable conduct. (See *Wetherbee* v. *United Ins. Co. of America,* 18 Cal.App.3d 266, 270-272 [95 Cal.Rptr. 678]—$1,050 actual damages, $200,000 punitive damages.)

I would affirm since I find no error, reversible or otherwise.

Petition for a rehearing was denied May 23, 1972. Cobey, J., was of the opinion that the petition should be granted.

Petitions for a rehearing were denied May 23 and June 9, 1972. Cobey, J., was of the opinion that the respondents' petition should be granted. Respondents' petition for a hearing by the Supreme Court was denied July 19, 1972.

---

[3]As so viewed, the compensatory damage award of $2,500 consists of $1,333 in additional attorney's fees, $663.60 in costs of arbitration and $503.07 in interest for late payment of the claim.