373 So.2d 1054 (1979)
Charles L. VINCENT and Bonnie J. Vincent
v.
BLUE CROSS-BLUE SHIELD OF ALABAMA, INC., a corporation.
77-736.
Supreme Court of Alabama.
May 25, 1979.
Rehearing Denied July 6, 1979.
Richard F. Ogle and Lee R. Benton, Birmingham, for appellants.
John B. Tally, Jr., Birmingham, for appellee.
PER CURIAM.
This is an appeal from an order granting summary judgment holding that plaintiffs-appellants, *1055 Charles L. Vincent and Bonnie J. Vincent, were not entitled to recover special or consequential damages occasioned by defendant's-appellee's, Blue Cross-Blue Shield of Alabama, Inc.'s, breach of a hospitalization insurance policy. The order for summary judgment further provided that the law of Alabama does not recognize a cause of action in tort for the bad faith refusal of an insurer to pay legitimate benefits due under a policy of hospitalization insurance. This appeal is taken as to both of the above stated portions of the trial court's order for summary judgment.
On June 15, 1976, complaint was filed in this action based upon two counts. This complaint was amended on May 11, 1977, so as to separate "Count Two" into "Counts Two and Three."
The first count of the Vincents' complaint alleged a breach of contract and sought compensatory damages in the sum of $10,000 for Blue Cross' breach of the hospitalization insurance policy. As amended, "Count Two" alleged that Blue Cross willfully and maliciously breached its duty of good faith toward its insureds by a bad faith refusal to pay benefits due under the policy. $10,000 compensatory damages and $500,000 punitive damages were sought under this count. "Count Three," as amended, alleged outrageous conduct on the part of Blue Cross and sought $10,000 compensatory and $500,000 punitive damages based upon a theory of intentional infliction of emotional distress.
Blue Cross filed its answer to the complaint based upon a general denial and two alleged defenses: (1) That the complaint failed to state a claim upon which relief could be granted against Blue Cross; and (2) that neither count stated claims upon which punitive damages could be awarded.
On July 11, 1978, the parties filed oral motions for summary judgment. For the limited purpose of that summary judgment, and for that purpose only, Blue Cross admitted its contractual indebtedness to the Vincents. Furthermore, for the limited purpose of that summary judgment, and for that purpose only, Charles and Bonnie Vincent admitted that there were no facts supporting their third count; i. e., the tort of intentional infliction of emotional distress. The trial judge heard arguments of counsel, reviewed the pleadings, the interrogatories and the depositions filed in this action, and entered the following order:
"IT IS ORDERED, ADJUDGED AND DECREED by the Court that summary judgment be, and the same is hereby, granted in favor of Plaintiff[s], Charles L. Vincent and Bonnie J. Vincent, against Defendant, Blue Cross and Blue Shield of Alabama, for `Count I' in the sum of Seven Thousand One Hundred Twenty-six and 76/100 Dollars ($7,126.76).
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that summary judgment be, and is hereby, granted in favor of Defendant, Blue Cross and Blue Shield as to `Counts II and III' of Plaintiffs' complaint and as to any further special or consequential damages under `Count I' of the complaint."
Furthermore, the court noted the agreement between the parties and held "... that should there be an appeal of this Order, and should said appeal result in a reversal of this Order for any reason, then and in that event, the parties may come back before this Court and reassert all claims and defenses previously deemed admitted for the limited purpose of this summary judgment."
The Vincents appealed.
The facts show that Bonnie Vincent became insured with Blue Cross under a group policy in 1974. Her husband, Charles, became insured through her on February 6, 1975. On May 6, 1975, Mr. Vincent entered St. Vincent's Hospital with chest pains diagnosed as "unstable angina." After a few days, he was transferred to University Hospital where he remained for five to six weeks for treatment. Claims were filed with Blue Cross by both hospitals and the doctors who treated Mr. Vincent during this period. In August, 1975, Mrs. Vincent telephoned Blue Cross inquiring why these claims had not been paid. In *1056 response, she received a letter, mailed October 3, 1975, indicating that the claims would be disallowed because of a preexisting condition. Thereafter, Mrs. Vincent telephoned Blue Cross from time to time and visited their offices twice to determine why the claims had not been paid. According to Mrs. Vincent, she was treated rudely and arrogantly by employees of Blue Cross. On April 27, 1976, Blue Cross sent Mrs. Vincent a letter stating further consideration would be given to the claims. On June 11, 1976, the company sent Mrs. Vincent a letter indicating it would pay the involved claims under the policy. On June 15, 1976, the Vincents filed this suit.

I.
It is settled that the law in this state does not permit recovery for personal injury, inconvenience, annoyance or mental anguish and suffering in an action for breach of a contract of insurance. Sanford v. Western Life Insurance Co., 368 So.2d 260 (Ala.1979); Stead v. Blue Cross-Blue Shield of Alabama, 346 So.2d 1140 (Ala. 1977); see, also, Old Southern Life Insurance Co. v. Woodall, 295 Ala. 235, 326 So.2d 726 (1976); Liberty National Life Insurance Co. v. Stringfellow, 38 Ala.App. 594, 92 So.2d 924 (Ct. of App.1956), cert. denied, 265 Ala. 561, 92 So.2d 927; affm'd on second appeal, 270 Ala. 80, 116 So.2d 595 (1959).
Therefore, the trial court correctly granted Blue Cross' motion for summary judgment on this theory.

II.
We also affirm the trial court's order granting summary judgment on the count seeking damages in tort for the failure of Blue Cross to pay the claim as initially filed.
We reiterate what we said in Childs v. Mississippi Valley Title Insurance Co., 359 So.2d 1146 (Ala.1978), and Old Southern Life Insurance Co. v. Woodall, supra. While this court might, under appropriate circumstances, recognize a tort action for the wrongful refusal to pay a valid claim, facts supporting such circumstances have not been developed here. For us to attempt to delineate circumstances, or to hypothesize facts under which the court would recognize a tort claim in the posture of this case, would amount to no more than an advisory opinion. We, therefore, decline to do so.

III.
Finally, all parties acknowledge the lack of any facts to support a claim for intentional or reckless infliction of emotional distress upon the Vincents. Therefore, the trial court properly granted summary judgment favoring Blue Cross on this claim. See: First National Bank of Birmingham v. Culberson, 342 So.2d 347 (Ala.1977); Billingsley v. Gordon, 340 So.2d 743 (Ala.1976); Holloway v. Government Employees Insurance Co., 295 Ala. 328, 329 So.2d 529 (1976).
The judgment appealed from is affirmed.
AFFIRMED.
TORBERT, C. J., and BLOODWORTH, MADDOX and SHORES, JJ. concur.
JONES, J., concurs specially.
ALMON, J., concurs in result.
FAULKNER, EMBRY and BEATTY, JJ., dissent.
JONES, Justice (concurring specially):
It was my initial inclination to dissent as to Part II of the opinion of the Court. Upon closer review of the record and further reflection, however, I agree that the evidence is insufficient to support a tort claim of bad faith. I am now of the opinion that, in the context of the record as here postured, the trial Court correctly granted Defendant's motion for summary judgment; and this for the reason that Plaintiffs failed to adduce evidentiary support for certain material allegations of their statement of claim.
I have reached this conclusion somewhat reluctantly, however, because it is apparent that counsel for both parties, with the cooperation of the trial Court, were seeking to structure a convenient and inexpensive vehicle *1057 through which this Court could deliver a more definitive follow-up on the dicta contained in Childs and Woodall respecting the potential tort remedy in Alabama for bad faith breach of contract.[1] While I agree with the judicial restraint exercised by the Court in this matter, I feel that some purpose might be served, by way of a specially concurring opinion, to discuss at some length certain results of my rather extensive research, along with my current personal views in this general area of law.
Therefore, I turn directly to the issue whether the law of Alabama should recognize a cause of action in tort for the breach by an insurer of a duty implied by law to deal fairly and in good faith with its insured so as not to wrongfully deny benefits due under a policy of insurance.
Essential to the determination of this issue is the question whether the law imposes a duty of good faith and fair dealing in the performance of an insurance contract; but, first a restatement of the distinction between a simple breach of contract and a tortious breach of an obligation arising from such contract must be made. In Mobile Life Insurance Co. v. Randall, 74 Ala. 170 (1893), a case dealing with the wrongful discharge of an employee, it is stated:
"For mere breaches of ordinary contracts, without more, this action [in tort] will never lie; for, in such breach of promise, there is no element of tort, in the legal sense of that term,`a wrong independent of contract.'Bouvier's Dic. Nevertheless, wrongs which will maintain an action on the case are frequently committed in the non-observance of duties, which are but the implication of contract-obligation. Contracts have a leading, primary obligationto do a specified act; to perform a specified service; or to pay or deliver a specified thing of value. A mere failure to perform such a contract-obligation is not a tort, and it furnishes no foundation for an action on the case. But contracts, however briefly expressed, are to be interpreted in the light of great legal principles, which enter into and permeate all human transactions. Hence, the duty of requisite skill, fidelity, diligence, and a proper regard for the rights of others, is implied in every obligation to serve another. The degree of these qualifications is graduated by the nature of the service undertaken; but they inhere in, and form a part of all dealings between man and man. The observance of these duties is necessary to the peace, good order and success, of all municipal regulation. Now, for a breach of the contract-obligation, the remedy is an action ex contractu. If the implications, or collateral duties of the service, be disregarded, and injury ensue, this is a tort, for which an action on the case will lie.
"Mr. Justice Parsons, in Wilkinson v. Moseley, 18 Ala. 288, said: `Perhaps the best criterion is this: if the cause of action, as stated in the declaration, arises from a breach of promise, the action is ex contractu; but, if the cause of action arises from a breach of duty growing out of the contract, it is in form ex delicto, and case.' In 2 Wait's Ac. and Def. 100, the doctrine is thus stated: `When there is a contract, either express or implied, from which a common-law duty results, an action on the case lies for the breach of that duty; in which case, the contract is laid as mere inducement, and the tort arising from the breach of duty as the gravamen of the action ....'
". . .
"... Wherever there is carelessness, recklessness, want of reasonable skill, or the violation or disregard of a duty which the law implies from the conditions or attendant circumstances, and individual injury results therefrom, an action on the case lies in favor of the party injured; and if the transaction had its origin in a contract, which places the parties in such relation as that, in performing or attempting to perform the service promised, the tort or wrong is *1058 committed, then the breach of the contract is not the gravamen of the suit...." 74 Ala., at 176-8
Thus, the initial inquiry becomes twofold: 1) As between contracting parties, is there a duty to use good faith and fair dealing so as not to interfere with the other party's expectation of performance? and 2) if so, does the duty arise from the express or implied terms of the contract or does the duty arise from the law, the contract being merely the creator of the state of things which furnishes the occasion for the tort?
This State has never expressly accepted nor rejected the theory that an action in tort may arise from the refusal of an insurance company to pay its insured benefits due in a "first party"[2] situation. Statements in recent opinions, however, indicate that, under the proper circumstances, a plaintiff might state a cause of action sounding in tort against a defendant insurer for failure to pay a claim.
In Old Southern Life Insurance Co. v. Woodall, supra, the Court, per Ms. Justice Shores, stated:
"The third claim asserts that Mr. Woodall suffered damage in that Old Southern fraudulently and maliciously failed to pay the claims made under the policy. There might be circumstances under which the failure to pay a claim under a policy of insurance would create a claim upon which relief may be granted sounding in tort, but such circumstances are not presented in this case. Old Southern argues that under no circumstances could a failure to pay a claim be tortious. We need not decide that question since, under the record before us, there are no circumstances shown which indicate that the company tortiously denied the claim." 295 Ala., at 243, 326 So.2d at 732.
More recently, in Childs v. Mississippi Valley Title Insurance Co., 359 So.2d 1146 (Ala.1978), we held that, based on the particular facts presented, the plaintiffs in that case failed to state a claim; but we went on to state:
"... [T]his Court, in the proper case, has not rejected first party bad faith tort actions against an insurer...."
Returning to the initial inquiry, it has long been the law of this State that every contract implies good faith and fair dealing between the parties. World's Exposition Shows, Inc. v. B. P. O. Elks, No. 148, 237 Ala. 329, 186 So. 721 (1939); see also Restatement, Law of Contracts 2d, § 231 (tentative drafts Nos. 1-7, Rev. and edited 1973). That this duty may be imposed by law is evidenced by a line of cases in this State allowing an action in tort when an insurer refuses, either in bad faith or negligently, to settle a third-party claim within policy limits, and such refusal results in a judgment against the insured in excess of policy limits. Waters v. American Cas. Co. of Reading, Pa., 261 Ala. 252, 73 So.2d 524 (1953). See also Nationwide Mutual Insurance Co. v. Smith, 280 Ala. 343, 194 So.2d 505 (1966); Dalrymple v. Alabama Farm Bureau Mutual Insurance Co., Inc., 267 Ala. 416, 103 So.2d 711 (1958).
I would hold, then, under the proper circumstances, an insured may have a tort action against his insurer for the insurer's intentional breach of the duty imposed by law to deal in good faith in the evaluation and paying of claims due under a policy of insurance. Before detailing the conduct that, in my opinion, will give rise to such a cause of action, it may be helpful to review and analyze the cases of other jurisdictions which have addressed this issue, to clarify and perhaps prevent some of the problems that have arisen with the recognition of this tort action.
The most well-known cases recognizing tort recovery for an insurer's failure to pay benefits due are a line of cases in California. As will be shown, these cases have allowed the plaintiff to recover on various theories of fraud, intentional infliction of *1059 emotional distress (outrage), and what has been termed the tort of "bad faith." These cases have tended to confuse and overlap the various theories of recovery, and they show the difficulty of specifically defining the actionable conduct involved in these claims.
In Wetherbee v. United Insurance Company of America, 265 Cal.App.2d 921, 71 Cal.Rptr. 764 (1968), the plaintiff alleged that the insurer had fraudulently induced her to maintain in effect her health and accident policy by knowingly making false representations that she would receive lifetime benefits in the event of permanent disability. The California Court of Appeal held that this was sufficient to allege a cause of action for fraud and that the evidence supported the jury's finding that the insurer, despite representations to the contrary, had never intended to comply with the terms of the policy. We recognized that recovery could be premised on this theory, if proof supported the allegations, in the case of Old Southern Life Insurance Co. v. Woodall, supra, and Old Southern Life Insurance Co. v. Woodall, 348 So.2d 1377 (Ala.1977) (second appeal).
In Fletcher v. Western National Life Insurance Co., 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970), the insured brought an action against his disability insurer for the intentional infliction of emotional distress by threatening to withhold, and actually withholding, benefits so as to save money for the company. The Court held that the plaintiff could recover on this theory upon a showing of 1) outrageous conduct by the defendant; 2) the defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress; 3) the plaintiff's suffering severe or extreme emotional distress by the defendant's outrageous conduct; and 4) actual and proximate causation of emotional distress by the defendant's outrageous conduct.
After discussing the elements necessary to establish a prima facie case of intentional infliction of emotional distress, the Fletcher Court's final analysis for allowing this tort action between parties whose initial relationship was based on contract was:
"An insurer owes to its insured an implied-in-law duty of good faith and fair dealing that it will do nothing to deprive the insured of the benefits of the policy."
The confusion inherent in analyzing the insurer's conduct in terms of intentional infliction of emotional distress and bad faith is shown by a later California case, Richardson v. Employers Liability Assurance Corp., 25 Cal.App.3d 232, 102 Cal.Rptr. 547 (1972). There, the plaintiff brought an action against his insurer for its alleged failure to settle in good faith a claim under the uninsured motorist provisions of his policy. Although no claim was alleged for the intentional infliction of emotional distress, the majority stated that the emotional distress of the insured must be "severe" in order for recovery to be allowed. As the dissent in this case correctly points out, the plaintiff had only alleged a breach of the implied-in-law duty of good faith and fair dealing and therefore there was no necessity of showing "severe" emotional distress.
Furthermore, at one point the Court in Richardson states:
"In every insurance policy there is implied by law a covenant of good faith and fair dealing."
While this language (i. e., the word "covenant") may have been used inadvisedly, I voice my personal disagreement with it. If the duty to use good faith dealing is an implied-by-law covenant, then, a claim based on the breach of this covenant would be an action ex contractu, invoking the general rule disallowing damages for emotional distress and punitive damages. Sanford v. Western Life Insurance Company, supra; Stead v. Blue Cross-Blue Shield of Alabama, supra.
That the law does not imply the standard of performance of a contractual term, which would support an action ex contractu, is addressed in Berry v. Druid City Hospital Board, 333 So.2d 796 (Ala.1976):
"... The duty of a hospital to use due care in the treatment of its patients is an obligation created by law; and the breach of that duty is a failure to *1060 observe a reasonable standard of due care under the circumstances which gives rise to the tort action. There exists a duty implied by law, as opposed to a contract implied by law, to exercise due care, the breach of which gives rise to an action in tort. We again affirm those decisions which refuse to imply a contract in law to impose a duty upon a hospital to use due care in the treatment of its patients." 333 So.2d at 799.
A similar statement is made in the case of Sanford v. Western Life Insurance Company, supra:
"In asking redress against Western Life for defrauding Stair of insurance benefits, Sanford necessarily avers a breach of duty imposed by law whether that duty be of good faith, fair dealing or honest disclosure; although such a duty, if it exists, must arise from the relationship of the parties as created by the insurance contract. This does not mean, however, that an action for breach of this duty is one `on a contract.' Rather, the contract merely establishes the relationship from which such a legally imposed duty could spring. [Cited cases omitted.]"
The rationale is that a contract is based on bargained for consideration, the terms and conditions of which are either expressed or implied from the circumstances arising out of the relationship of the parties; and, absent an express manifestation that the implied-in-law duty is also a part of the contract, the law will not imply that the parties have bargained for a duty that the law already imposes. Berry v. Druid City Hospital Board, supra; see also, Vines v. Crescent Transit Co., 264 Ala. 114, 85 So.2d 436 (1956).
While the standard addressed in Berry is that of "due care," it is not unlike the "good faith and fair dealing" standard here involved. As aptly stated in Richardson:
"... The duty violatedthat of dealing fairly and in good faith with the other party to a contract of insuranceis a duty imposed by law, not one arising from the terms of the contract itself. In other words, this duty of dealing fairly and in good faith is nonconsensual in origin rather than consensual. Breach of this duty is a tort."
Therefore, although there is no implied-in-law good faith covenant or duty enforceable in contract, the law will not preclude recovery in tort for the same conduct which breaches the implied-in-law duty of good faith.
Perhaps the best known decision in this area is the case of Gruenberg v. Aetna Life Insurance Company, 9 Cal.3d 566, 108 Cal. Rptr. 480, 510 P.2d 1032 (1973). After a lengthy analysis of the Fletcher and Richardson cases, as well as a discussion of Crisci v. Security Insurance Co. of New Haven, Conn., 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967) (a third-party refusal to settle within policy limits case), the California Supreme Court determined that the plaintiffs had stated a cause of action for the alleged breach, by the defendant insurer, of the duty to deal fairly and in good faith in the payment of a policy claim, and that such an action sounded in tort. The Court went on to distinguish this tort from the tort of intentional infliction of emotional distress, stating that so long as the plaintiff alleges and proves substantial injury other than the infliction of emotional distress, then there need not be a showing of "severity" in the mental distress suffered. The Court noted that the insured had alleged substantial economic loss apart from mental distress in that he had a loss of earnings; that he was compelled to go out of business; he was unable to pay creditors; and that he was compelled to defend lawsuits brought against him by his creditors. The Court in Gruenberg explicitly overruled Richardson to the extent it was inconsistent with this aspect of its decision.
As to the conduct of the defendant insurance company that will give rise to a cause of action for failure to deal in good faith, Austero v. National Casualty Company of Detroit, Michigan, 84 Cal.App.3d 1, 148 Cal. Rptr. 653 (1978), held:
".. [T]he ultimate test of liability in the first party cases is whether the *1061 refusal to pay policy benefits was unreasonable."
In the case of Silberg v. California Life Insurance Co., 11 Cal.3d 452, 113 Cal.Rptr. 711, 521 P.2d 1103 (1974), the California Supreme Court addressed the issue of awarding punitive damages in these cases and held that in order to justify an award of punitive damages the defendant must be guilty of oppression, fraud, or malice. The defendant must act with the intent to vex, injure or annoy, or with conscious disregard of the plaintiff's rights.
To summarize the California experience in this area, the courts of that jurisdiction have allowed recovery for the refusal to pay an insured benefits due under a contract of insurance on the various theories of fraud, outrageous conduct, and what has come to be known as the tort theory of "bad faith." The actionable conduct of the defendant insurer has been variously defined as "fraudulent" (Wetherbee, supra), "outrageous" (Fletcher and Richardson, supra), and, more recently, "unreasonable" (Austero, supra). The duty to deal fairly and in good faith has been referred to both as a duty imposed by law and as a covenant implied by law. The necessary proof to recover damages has ranged from a showing of "severe" emotional distress to a showing of mental distress (with no severity requirement) if accompanied by other substantial injury.
While an analysis of the California cases serves as an aid in showing the difficulty inherent in defining the conduct of an insurer that will give rise to a tort action when it fails to pay a first-party claim, I refuse to accept carte blanche any of the various theories of the California cases as being the definitive law in this area. This is not to reject, even by the more severe test which I hereinafter propose, the results of the California cases; for, surely, the facts of each of those cases literally cry out for relief. I think, however, that a more definitive and more rigid test of the claimant's burden of proof is commensurate with compelling public policy considerations.
Another recent case recognizing that an insured may assert a cause of action in tort for an insurer's bad faith refusal to honor a valid claim of an insured is Anderson v. Continental Insurance Company, 85 Wis.2d 675, 271 N.W.2d 368 (1978). In Anderson, the Supreme Court of Wisconsin, per Mr. Justice Heffernan, gives an excellent discussion on the distinction between tort and contract:
"By virtue of the relationship between the parties created by the contract, a special duty arises, the breach of which duty is a tort and is unrelated to contract damages. This tort of bad faith or malicious and intentional harassment by one party to a contract directed toward the other party, who seeks to assert his contract claim, has been referred to as a `tortious breach of contract.' [Cited case omitted.] While that term may be a convenient shorthand method of denominating the intentional conduct of a contracting party when it acts in bad faith to avoid its contract obligations, it is confusing and inappropriate, because it could lead one to believe that the wrong done is the breach of the contract. It obscures the fact that bad faith conduct by one party to a contract toward another is a tort separate and apart from a breach of contract per se and it fails to emphasize the fact that separate damages may be recovered for the tort and for the contract breach.
"When it is recognized that recovery is sought for the tort and not for the breach of contract, the cliches which are relied upon by the defendantse. g., `Punitive damages are not allowed for a mere breach of contract'become irrelevant. The question whether punitive damages are permissible thus is not to be disposed of on grounds that what the plaintiffs assert is a breach-of-contract action, but rather must be considered under a discussion of whether the facts surrounding the tort of bad faith evidence such conduct that punitive or exemplary damages are permissible....
"We emphasize at this juncture only that the tort of bad faith is not a tortious *1062 breach of contract. It is a separate intentional wrong, which results from a breach of duty imposed as a consequence of the relationship established by contract...."
I cite this language in order to reaffirm and support the preceding discussion as to the law in this State distinguishing between the remedy for breach of a duty imposed by law (action ex delicto) and the remedy for breach of an express or implied contractual term (action ex contractu); and to emphasize again that, while tort and contract remedies are distinguishable as to the respective sources of duty and requisite elements, often the same conduct can give rise to a cause of action sounding either in tort or in contract (or both), the choice of remedy being at the sole discretion of the plaintiff without regard to motive. Tennessee Coal, Iron & Railroad Co. v. Sizemore, 258 Ala. 344, 62 So.2d 459 (1953).
Also, in Anderson, the Wisconsin Court defines the actionable conduct of the insurer in a bad faith action as follows:
"To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then that the tort of bad faith is an intentional one. `Bad faith' by definition cannot be unintentional. `Bad faith' is defined as `Deceit; duplicity; insincerity.' American Heritage Dictionary of the English Language (1969), p. 471. The same dictionary defines `deceit' as a `stratagem; trick; wile' (p. 342), and duplicity as `Deliberate deceptiveness in behavior or speech.' (p. 405)

"Hilker [Hilker v. Western Automobile Ins. Co., 204 Wis. 1, 231 N.W. 257, 235 N.W. 413 (1930, 1931) a third-party refusal to settle case] emphasizes that bad faith is the absence of honest, intelligent action or consideration based upon a knowledge of the facts and circumstances upon which a decision in respect to liability is predicated. While Hilker emphasizes the duty of ordinary care and reasonable diligence on the part of an insurer in handling claims, it is apparent from Hilker that the knowing failure to exercise an honest and informed judgment constitutes the tort of bad faith.
"The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, i. e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances....
". . .
"While we have stated above that, for proof of bad faith, there must be an absence of a reasonable basis for denial of policy benefits and the knowledge or reckless disregard of [a lack of] a reasonable basis for a denial, implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured."
At first blush, this language may appear contradictory in defining the tort of "bad faith" as an intentional tort and then going on to state that, to prove the tort of bad faith, the plaintiff must allege and prove, on the basis of an objective standard, the absence of a reasonable basis for denying the claim. The Wisconsin Court states that the initial inquiry must be, "Would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances?" Taken out of context, the "reasonable insurer" and "objective standard" language would appear to make "bad faith" a tort predicated on negligence.
A closer analysis reveals that the Wisconsin Court was correct in defining the tort of bad faith as an intentional tort and that the "reasonable insurer" language is not contradictory. Instead, in proving the tort of bad faith, the Wisconsin Court makes clear that a two-step approach is necessitated. First, a determination must be made whether *1063 there was a reasonable basis for denying benefits. This, the Wisconsin Court states, is determined on an objective basis using a reasonable insurer standard. Only after a determination that there is no reasonable basis for denying the claim (i. e., "where the validity of the claim was not even fairly debatable") can it be determined whether the insurer in any particular case has acted intentionally (i. e., with knowledge or with reckless disregard of the lack of a reasonable basis for denying the claim).
While I find this two-step determination appropriate in deciding whether an insurer's conduct is actionable, I seek to avoid the possibility of confusion that might be created by the language used by the Wisconsin Court. As will be discussed in further detail below, I would hold that in order to state a claim for the tort of bad faith in this State the plaintiff must show: 1) a virtually non-existent dispute that the claim is due and owing; and 2) that the insurer had knowledge that there was no genuine dispute over the claim or that the insurer acted with reckless disregard of the insured's right to have his claim evaluated and honored.
It should be apparent, then, that what I am defining is an intentional tort as opposed to a "lack of due care" variety of tort. In the classical terms of the common law, it is an action in trespass, not an action on the case. It is an action sustainable only upon a showing that the insurer's action, under the circumstances, is so flagrant and oppressive, committed without legal or factual justification and with the intent to injure, or, in the case of nonfeasance, with such reckless disregard of the insured's rights, as to constitute willful and malicious misconduct.
To those who would say in rejoinder that my proposed holding has made it extremely difficult for an insured to recover against the insurer in tort for this failure to perform its contractual obligations, I can only reply: Public policy considerations, as discussed herein, constrain the law not to impose upon the insurer a duty of good faith performance (beyond its contractual obligations) which unduly restricts the legitimate exercise of its contractual rights; thus, the burden imposed upon the insured (or one claiming benefits) necessarily must be sufficiently onerous to offset unwarranted abuse of the legal process. It will be difficult indeed; and I think it should be.
Appellants-Insureds, in contending that our own case law is ample precedent for maintaining this tort action of bad faith, point to the following language in Waters, supra:
"This Court has long since taken the position that under certain circumstances, for the breach of a contract there may be either an action of assumpsit or one in tort. That means that when there is a contract expressed to exercise reasonable diligence in the performance of an act, or when there is a specific contract to do an act, a failure to exercise reasonable diligence on the one hand or to do the act on the other gives rise to an action of assumpsit. But when the contract is to exercise reasonable care to perform the act, a failure to exercise such reasonable care may be redressed by either assumpsit or in tort. Mobile Life Ins. Co. v. Randall, 74 Ala. 170; Tennessee Coal, Iron & Railroad Co. v. Sizemore, 258 Ala. 344, 62 So.2d 459. When the contract does not in terms require reasonable care in doing the act stipulated to be done, the law imposes a dutybut does not imply a contractto exercise due care in doing the act; and, therefore, when negligence exists in doing that act an action in tort only is available because there is no express or implied contract which is breached. Such is the result of our cases cited above. [261 Ala. at 258, 73 So.2d at 528-529.]
". . .
"... A failure to exercise ordinary diligence proximately causing damage to the insured is actionable in tort...." (This latter sentence appears in the extended opinion On Rehearing at p. 260, 73 So.2d at p. 531.)
Indeed, there is nothing new in Waters as it tracks the classical language of our election *1064 of remedies doctrine; and, at first blush, its scope appears to comfortably embrace the four corners of the "bad faith" remedy here contended for. But, as the Insurer reminds us, this simplistic approach has already been dispelled by the subsequent case of Calvert Fire Insurance Co. v. Green, 278 Ala. 673, 180 So.2d 269 (1965). There, this Court rejected the "imposed by law duty of due care" theory in the context of an alleged negligent delay in payment of insurance benefits. Calvert Fire distinguishes its holding from Waters on public policy considerations:
"[Insured] cites us one sentence from [Waters]: `A failure to exercise ordinary diligence proximately causing damage to the insured is actionable in tort.' But that sentence and that case had to do with liability insurance, where the insurer could have settled, and was requested by the insured to do so, a claim for damages within the limits of the policy. Here, the coverage is for property loss or damage...."
In reply to this distinction, the Insureds here add, "But this is a claim based on `bad faith' not `negligence,' and our case law has not extended the Calvert Fire public policy distinction to abort the `good faith' duty of Waters in first-party insurance claims; and, additionally, dicta of recent cases make it clear that failure to settle such claims may, under appropriate circumstances, give rise to an action in tort."
In summary, then, Calvert Fire holds that the law will not impose a duty, redressable in tort, for the insurer's negligent failure to settle a first-party claim. I would reaffirm this principle.
Yet, there remains the inquiry whether the public policy considerations addressed in the third-party context of Waters are sufficiently different in a first-party context, when applied to a "bad faith" claim, to render the Waters rationale inapplicable and thus impose no legal duty of "good faith" in the processing of claims under a contract of insurance.
My answer is a qualified, "No." That is, I would hold that there is a field of operation for Waters, limited to a "good faith" duty; but there are distinguishing public policy considerations here, not present in Waters, which require a redefinition of the duty legally imposed, the breach of which will support a tort action.
Before concluding the discussion of this first-party "good faith" duty, and the elements essential to its breach, I believe a further analysis of an added dimension of the public policy considerations (not articulated though perhaps implicit in Calvert Fire) will help explain the severity and rigidity of the test herein defined. The reasonable expectations of parties to an insurance contract contemplate a broad range of freedom on the part of the insurer to evaluate claims submitted thereunder and to decline payment in nonmeritorious cases. The corresponding duty to use diligence in the review and prompt payment of meritorious claims is contractually bargained for and the law need not impose a further duty to enforce its negligent breach. Similarly, this freedom (and, perhaps, the duty) not to honor, and thus legally dispute, claims of questionable validity in accordance with the terms of the contract is effectively denied if the law imposes so high a duty of faithful performance as to pose a threat of increased risks in the event the dispute is ultimately resolved adversely to the insurer.
These public policy considerations, however, do not persuade me that the law imposes no duty of good faith performance. Surely, the law cannot leave without a remedy unconscionable conduct which is calculated to inflict substantial injury upon another whose rights arise under the contract. The duty which I would impose in these cases does not embrace the honest mistake in denying a claim, nor does it include the negligent delay or negligent refusal to honor a claim. Rather, it is an intentional tort, a species of fraud within Rule 9(b), ARCP.
In my opinion, the law imposes upon an insurer the duty not to willfully and maliciously, without legal justification, and with the intent to injure, refuse to evaluate or honor a claim, the breach of which, if proximately resulting in substantial injury, will *1065 sustain an action in tort. As in other intentional torts, its elements may be proved by circumstantial, as well as direct, evidence. "Substantial injury" means personal or economic injury of a significant nature as opposed to an injury of a nominal or insignificant nature. Recoverable damages may include, subject to the "substantial injury" test, mental distress and economic loss; and, when actual damages are proved, punitive damages may be awarded.
This Intentional Tort of Bad Faith must necessarily await the factual context of a live litigated case for a more definitive statement of its elements and its application.
EMBRY, Justice (dissenting):
I respectfully dissent.
The dispositive issue in this case is whether and under what circumstances an insurer will be held liable in tort for the wrongful refusal to pay a direct claim of its insured.
Plaintiff-appellant, Bonnie J. Vincent, first became insured with appellee, Blue Cross-Blue Shield of Alabama, Inc. (Blue Cross), under a group policy in 1974. Her husband, plaintiff-appellant, Charles L. Vincent, became insured through her on 6 February 1975. Mr. Vincent was hospitalized at St. Vincent's hospital on 6 May 1975 with chest pains diagnosed as "unstable angina." After a few days he was transferred to University Hospital where he remained for five to six weeks for further treatment. Claims were filed with Blue Cross by both hospitals and those doctors treating Mr. Vincent. The claims were not paid and Mrs. Vincent telephoned Blue Cross to find out why. No explanation was given, but on 3 October 1975, a letter from Blue Cross was mailed to Mrs. Vincent indicating that her claims would be disallowed because Mr. Vincent had a heart condition preexisting the date of insurance coverage. In reply to this contention plaintiffs insist there was no factual basis for this ground of denial. Thereafter, Mrs. Vincent repeatedly contacted Blue Cross in an effort to determine why coverage had not been afforded. According to Mrs. Vincent, she was treated rudely and arrogantly by Blue Cross during those contacts. On 27 April 1976, Blue Cross sent her a letter stating it would give further consideration to her claims and on 11 June 1976 notified her that the claims would be paid.
On 15 June 1976, the Vincents filed a complaint which, as amended, contained the following three counts:

"Count One
"Plaintiffs claim of the defendant the sum of $10,000, for compensatory damages for that during the month of January, 1975, the plaintiffs became qualified as insureds pursuant to an insurance policy issued by the defendant. Plaintiffs further allege that during the month of May, 1975, the plaintiff, Charles L. Vincent, became ill because of a certain heart disease and required hospitalization. And the plaintiffs say that the said Charles L. Vincent did incur large amounts of medical bills pursuant to this illness and that a claim was made on the defendant for coverage pursuant to said policy. However, the defendant breached said policy by declining coverage thereunder to the plaintiffs' damage as aforesaid.

"Count Two
"The plaintiffs adopt and allege each and every allegation of Count One. And the plaintiffs allege that the defendant did, without cause, and in bad faith, willfully and maliciously decline coverage pursuant to said policy. This was accomplished by the defendant advising the plaintiffs that coverage was denied because it had information from the doctors attending the plaintiff, Charles L. Vincent, that the illness suffered by said plaintiff during the month of May, 1975 was a consequence of a preexisting illness and, therefore, not covered under said policy, when, in fact, the defendant had no such information whatsoever. And the plaintiffs say that the doctor who attended said plaintiff during said illness has denied, in writing, and otherwise, ever so advising the defendant. Wherefore, plaintiffs make claim for $10,000.00 *1066 compensatory damages and $500,000.00 punitive damages.

"Count Three
"The plaintiffs adopt and allege each and every allegation of Count One. Further, plaintiffs allege that from the very first time that a claim was made for the medical expenses described in Count One, the defendant did engage in extreme and outrageous conduct which intentionally or recklessly caused severe emotional distress to the plaintiffs and has continued to intentionally or recklessly inflict emotional distress by its outrageous conduct toward the plaintiffs, which conduct includes and has included such matters as accusing the plaintiff, Charles L. Vincent, of malingering with reference to the above described heart disease, treating each plaintiff in such a rude and outrageous manner that the plaintiffs have been caused to suffer emotional distress, all with conscious disregard of the right of the plaintiffs. And the plaintiffs allege that the defendant has, by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress and bodily harm to the plaintiffs, for which the plaintiffs make claim for $10,000.00 compensatory damages and $500,000.00 punitive damages."
Blue Cross filed an answer which denied the allegations of the complaint and asserted that the complaint failed to state a claim upon which relief could be granted and failed to state a claim upon which punitive damages could be awarded.
At the pretrial conference the Vincents and Blue Cross made oral motions for summary judgment. The trial court, based upon pleadings, oral statements of counsel, depositions, interrogatories and exhibits, entered summary judgment in favor of the Vincents on Count One of their complaint and awarded them $7,126.76; in favor of Blue Cross on Count One as to any further special or consequential damages; in favor of Blue Cross on Count Two because it failed to state a cause of action under Alabama law; and in favor of Blue Cross on Count Three because the plaintiffs stipulated (for the limited purpose of the motions) that there were no facts to support its allegations. The Vincents thereupon filed notice of appeal to this court. They contend the trial court erred in its holding that Alabama law would not permit an action based on the allegations contained in Count Twothe tort of bad faith or "outrage."[1]
As stated in Childs v. Mississippi Valley Title Insurance Co., 359 So.2d 1146 (Ala. 1978), the tort of bad faith has neither been accepted nor rejected in first-party actions in Alabama.[2] The tort has, however, been recognized in third-party actions where an insurer wrongfully refuses to settle a third-party claim within policy limits, and such refusal results in a judgment against the insured in excess of policy limits. Childs v. Mississippi Valley Title Insurance Co., supra; Nationwide Mutual Insurance Co. v. Smith, 280 Ala. 343, 194 So.2d 505 (1967). Dalrymple v. Alabama Farm Bureau Insurance Co., 267 Ala. 416, 103 So.2d 711 (1958). Waters v. American Casualty Co. of Reading, Pa., 261 Ala. 252, 73 So.2d 524 (1953). In Waters, this court held that if a contract of insurance does not by its terms require the insurer to perform its duties with reasonable care, the law will impose such a requirement. "Bad faith" was defined as the intentional failure of the insurer to perform the duties at all. 261 Ala. 258, 73 So.2d at 529.
The issue in this case is whether a recovery based on such an intentional failure to perform by an insurer will be extended to a direct claim by its insured. I would hold that it would in the limited circumstances hereafter prescribed.
*1067 In Calvert Fire Insurance Co. v. Green, 278 Ala. 673, 180 So.2d 269 (1965), this court held there is no duty imposed by law on an insurer to use ordinary diligence in processing a direct claim of its insured. Thus, the negligence cause of action made available in third-party actions by the holding in Waters was not extended to first-party actions by an insured. We reaffirm this position and will not adopt a test for "bad faith" which will directly or indirectly allow recovery based on negligence. The legitimate freedom of an insurer to legally dispute claims of questionable validity in accordance with the terms of the insurance contract would be unduly inhibited by imposition of a negligence standard. Public policy favors the free exercise of rights arising from a contract by the parties to it.
However, this is not to say that an insurer may in bad faith breach his contract with impunity. The law will not allow an insurer to wilfully refuse to evaluate or honor a claim with the knowledge that the avowed purpose of the insurance contract was to protect the insured at his weakest and most perilous time of need. In no other area of the law is there more of a call for good faith at such a crucial time than in the area of insurance contracts. The insurance industry itself fosters a good faith image by adopting in their advertisements protective symbols and emblems; and slogans such as "you're in good hands." But the duty to act in good faith does not arise solely from such representations. As this court stated in Waters, it is imposed by law and consequently, a breach of that duty is a tort. See Childs, supra.
Therefore, I would hold there is a cause of action for the tort of bad faith in first-party actions. Under what circumstances is the duty of good faith breached by the insurer? What is the test for the tort of bad faith?
An examination of the tests for bad faith devised in other jurisdictions reveals that most open the door for recoveries based on negligence.
In California
"* * * the ultimate test of liability in the first party cases is whether the refusal to pay policy benefits was unreasonable. * * *" Austero v. National Casualty Co. of Detroit, Michigan, 84 Cal. App.3d 1, 32, 148 Cal.Rptr. 653, 673 (1978).
In Anderson v. Continental Insurance Co., 85 Wis.2d 675, 271 N.W.2d 368 (1978), the Wisconsin Supreme Court held the tort of bad faith to be an intentional one, but based its test for bad faith on the lack of a reasonable basis for denial of a claim. A "reasonable basis" was defined to be one upon which a reasonable insurer would have denied the claim. Similarly, in Ohio an insured may recover upon proof that the insurer had no intention of paying the claim, but such intention may be demonstrated by the lack of a reasonable basis for denial. Kirk v. Safeco Insurance Co., 28 Ohio Misc. 44, 273 N.E.2d 919 (1970). What a reasonable insurer would do or not do is a negligence test. This I cannot accept.
In rex Insurance Co. v. Baldwin, 163 Ind.App. 308, 323 N.E.2d 270 (1975), the determinative factor was whether the insurer could in good faith dispute the claim. In Michael v. National Security Fire Casualty Co., 458 F.Supp. 128 (N.D.Miss.1978), the test was held to be whether the insurer had a legitimate or arguable reason for failing to pay a claim. This language more closely comports with the type of intentional tort which I herein seek to define. Under the proper test, in my opinion, an insurer will not be held liable for an honest, but mistaken, belief that a legitimate basis exists for refusal to pay a claim. Any other approach would necessarily lead to inclusion of a negligence standard of conduct within the test for bad faith.
Accordingly, I would hold an actionable tort arises where an insurer intentionally refuses to pay a claim of its insured where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal.
*1068 Because of the nature of the test, it would be for the trial court to determine as a matter of law whether any lawful basis for the refusal existed. Should the court find a lawful basis for refusal existed, it would direct a verdict in favor of the insurer. Should the court find no lawful basis existed, it would be for the jury to determine whether the insurer had actual knowledge of its nonexistence. Whether the insurer intentionally failed to determine whether or not there existed a lawful basis for refusal would also be a question for the finder of fact. Under this test, an insurer would not be held liable for a mistaken but good faith belief that a lawful basis for refusal exists.
As in other intentional torts, the elements of the tort of bad faith could be proved by circumstantial as well as direct evidence. Recoverable damages could include mental distress and economic loss, and where fraud or malice is proved, punitive damages could be awarded.
Because this case is being reviewed in the context of an order granting summary judgment in which the trial court ruled as a matter of law that Alabama does not recognize a tort action for the bad faith breach of a first-party contract of insurance, and because the plaintiffs' complaint specifies "bad faith" as the theory of recovery, I would reverse the judgment of dismissal and remand the cause for further proceedings consistent with my views expressed in this dissent.
FAULKNER and BEATTY, JJ., concur.
NOTES
[1] The summary judgment order expressly held that the law of Alabama does not recognize a cause of action in tort for the bad faith refusal of an insurer to pay legitimate benefits due under a policy of hospitalization insurance, "even assuming the bad faith of insurer."
[2] "First party" refers to suits by an insured against his insurer to recover for the failure to pay amounts due under the policy. It does not include an insurer's refusal to settle within policy limits an action brought by a third party.
[1] Because "outrage" often refers to the tort of intentional infliction of mental distress, see W. Prosser, Law of Torts, § 12, pp. 55-60 (4th ed. 1971), I will refer to the cause of action sought in this case as the "tort of bad faith."
[2] For a general discussion of this tort, see Smith, The Status of the Tort of Outrage as it Exists Today in Alabama and Other Jurisdictions, 40 Ala.Law. 568 (1978). Comment, The Tort of Bad Faith: A Perspective Look at the Insurer's Expanding Liability, 8 Cum.L.Rev. 241 (1977).