[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 01-10829
_____

D. C. Docket No. 00-11703-CV-6-J-J

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 27, 2001
THOMAS K. KAHN
CLERK

BILL GILBERT,

Plaintiff-Appellee-
Cross-Appellant,

versus

ALTA HEALTH & LIFE INSURANCE COMPANY,
GREAT WEST LIFE & ANNUITY INSURANCE
COMPANY OF DENVER,

Defendants-Appellants-
Cross-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

**(December 27, 2001)**

Before ANDERSON, Chief Judge, BLACK, Circuit Judge, and MORENO*, District
Judge.

ANDERSON, Chief Judge:

_____

*Honorable Federico A. Moreno, U.S. District Judge for the Southern District of Florida, sitting by
designation.

This appeal involves the scope of state law preemption under the

Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461.  Specifically, the case presents two questions:  (1) whether ERISA's saving clause applies to Alabama's bad faith law, saving it from preemption by ERISA; and (2) whether a sole shareholder of a corporation can be a "beneficiary," within the meaning of 29 U.S.C. § 1002(8).  We hold that Alabama's bad faith law is not saved from preemption by the saving clause, and that a sole shareholder can be a "beneficiary" and thus is subject to ERISA preemption.

## I.  FACTS

### A.  The Factual Background

The plaintiff, Bill Gilbert is sole shareholder of Winfield Monument Company, a corporation which purchased a health insurance policy from Alta Health & Life Insurance Company ("Alta").  Gilbert v. Alta Health & Life Ins. Co., 122 F.Supp.2d 1267, 1268 (N.D.Ala. 2000).  Because the insurance policy covered at least one other employee of Winfield Monument Company, besides Gilbert and his wife, there is no dispute that it constituted an ERISA plan.  Id.  In October 1999, Gilbert had gallbladder surgery, incurring medical bills of $10,729.  Id.  He properly filed claims for coverage under the insurance policy.  Alta denied the claims in part, agreeing to pay only $5710 of the total bill, an amount it said was usual and customary.  Gilbert responded by filing suit in Alabama state court

2

against Alta and Alta's parent company, Great-West Life & Annuity Insurance Company. The complaint alleged fraud, breach of contract, and bad faith denial of an insurance claim.[1] Gilbert sought both compensatory and punitive damages. R-1, Tab 1, Complaint at 3. Upon receipt of the complaint, Alta paid the medical bill in full.

Alta removed the state action to federal court on grounds of diversity and subject matter jurisdiction. It then filed a motion to dismiss on the grounds that the state law claims are preempted by ERISA. Gilbert argued that his state law claims are not preempted because the sole shareholder of a corporation cannot be a "participant" or a "beneficiary," as defined by ERISA, and thus is not subject to ERISA regulation. In addition, he argued that ERISA's saving clause applies to Alabama's bad faith law, saving that claim from preemption.

The district court dismissed the case in part. It ruled that Gilbert is a "beneficiary" of an ERISA plan, and subject to ERISA preemption. 122 F.Supp.2d at 1273. It dismissed Gilbert's breach of contract and fraud claims, but found that Alabama's bad faith law escapes preemption under the saving clause. Id. This interlocutory appeal was granted pursuant to 28 U.S.C. § 1292(b) to resolve the

---

[1]Alabama's codification of its bad faith law provides, in relevant part: "No insurer shall, without just cause, refuse to pay or settle claims arising under coverages provided by its policies in this state . . . ." Ala. Code § 27-12-24 (2001).

questions of whether Alabama's bad faith law is preempted by ERISA or saved

from preemption by the saving clause, and whether Gilbert is a "beneficiary"

within the meaning of 29 U.S.C. § 1002(8).

B.  The Statutory Background

ERISA creates a comprehensive regulatory scheme for employee welfare

benefits plans, including health insurance.  Section 502 establishes a civil

enforcement scheme for benefit plans subject to ERISA regulation.  29 U.S.C. §

1132.[2]  Only "participants or beneficiaries" of a plan are authorized to file lawsuits

seeking benefits due under the plan.  29 U.S.C. § 1132(a)(1)(B).

The term "beneficiary" is defined as "a person designated by a participant or

by the terms of an employee benefit plan, who is or may become entitled to a

benefit thereunder."[3]  29 U.S.C. § 1002(8).  A "beneficiary" is authorized to bring a

---

[2]29 U.S.C. § 1132(a)(1) reads:

(a) Persons empowered to bring a civil action
    A civil action may be brought--
     (1) by a participant or beneficiary--
         (A) for the relief provided for in subsection (c) of this section, or
         (B) to recover benefits due to him under the terms of his plan, to enforce
         his rights under the terms of the plan, or to clarify his rights to future
         benefits under the terms of the plan.

[3]A "participant" is "any employee or former employee of an employer, or any member or
former member of an employee organization, who is or may become eligible to receive a benefit
of any type from an employee benefit plan which covers employees of such employer or

4

civil suit to recover benefits due, and to enforce or clarify his rights under the terms of the plan. 29 U.S.C. § 1132(a)(1). A "beneficiary" may also file suit seeking equitable relief to redress violations or to enforce provisions of ERISA and of the benefits plan. 29 U.S.C. § 1132(a)(3).

The causes of action and available remedies under the civil enforcement scheme are limited by ERISA's preemption clause, 29 U.S.C. § 1144(a), which provides that the terms of ERISA generally supersede state laws affecting employee benefit plans. The clause states:

> Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter related to any employee benefit plan . . . .

29 U.S.C. § 1144(a). The exception to preemption is contained in section 1144(b)(2)(A), the saving clause, which exempts from preemption any state law which "regulates insurance":

> Except as provided in subparagraph (B) [the deemer clause[4]], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or

---

members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). The question of whether Gilbert is a "participant" was not raised by the parties, and thus is not before this Court.

[4]The "deemer clause" prevents a state law that "purports to regulate insurance" from deeming an employee benefit plan to be an insurance company. 29 U.S.C. § 1144(b)(2)(B). The deemer clause is not at issue here.

5

securities.

29 U.S.C. § 1144(b)(2)(A). Therefore, for a person who is a "participant" or "beneficiary" of an ERISA plan to have a cause of action, it must either be (1) a cause of action specifically included in ERISA itself, or (2) a state cause of action created by a law saved from preemption by the saving clause. We turn first to the saving clause issue.

## II. DISCUSSION

### A. Alabama's Bad Faith Law

In Pilot Life Ins. Co. v. Dedeaux, the Supreme Court ruled that Mississippi's law of bad faith was not saved from preemption by ERISA's saving clause. 481 U.S. 41, 107 S.Ct. 1549 (1987). The case before us bears great similarity to Pilot Life. Like the Mississippi law, the Alabama tort of bad faith refusal to pay insurance benefits, codified at Ala. Code § 27-12-24, allows for the award of punitive and/or extracontractual damages if an insurance company knowingly or maliciously refuses to pay a legitimate insurance claim. We must apply the test established in Metropolitan Life Ins. Co. v. Mass., 471 U.S. 724, 105 S.Ct. 2380 (1985), employed in Pilot Life, and most recently described in UNUM Life Ins. of Am. v. Ward, 526 U.S. 358, 119 S.Ct. 1380 (1999).

6

Our inquiry begins with the intent of Congress. Pilot Life, 481 U.S. at 45, 107 S.Ct. at 1552. The saving clause does not stand alone; rather, it is only one piece of an entire regulatory scheme. It is axiomatic that "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." Id. at 51, 107 S.Ct. at 1555 (quoting Kelly v. Robinson, 479 U.S. 36, 43, 107 S.Ct. 353, 358 (1986) (additional citations omitted). In particular, "our understanding of the saving clause must be informed by the legislative intent concerning the civil enforcement provisions provided by ERISA § 502(a), 29 U.S.C. § 1132(a)." Id. at 52, 107 S.Ct. at 1555. We must consider "the role of the saving clause in ERISA as a whole." Id.

The Supreme Court found that Congress "clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) [29 U.S.C. § 1132] be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits." Pilot Life, 481 U.S. at 52, 107 S.Ct. at 1555. The Court recently reiterated this when it stated that "differing state regulations affecting an ERISA plan's 'system for processing claims and paying benefits' impose 'precisely the burden that ERISA preemption was intended

to avoid.'"[5] Egelhoff v. Egelhoff, 532 U.S. 141, 121 S.Ct. 1322, 1329 (2001) (quoting Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 10, 107 S.Ct. 2211, 2217 (1987)). The civil enforcement scheme "represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." Pilot Life, 481 U.S. at 54, 107 S.Ct. at 1556. This balance "would be completely undermined" if remedies rejected by Congress were available under state law. Id.; see also Corporate Health Ins., Inc. v. Tex. Dept. of Ins., 215 F.3d 526, 539 (5th Cir. 2000) ("ERISA's civil enforcement scheme . . . preempts . . . supplemental state law remedies."). Congress' intent thus provides the backdrop for the saving clause test laid out in Metropolitan Life, which consists of two prongs: (1) whether, under a common-sense view, the law "regulates insurance;" and (2) whether the McCarran-Ferguson Act factors support the assertion that the law "regulates insurance." Pilot Life, 481 U.S. at 48-49, 107 S.Ct. at 1553; Metropolitan Life, 471 U.S. at 740-44, 105 S.Ct. at 2389-91.

1. The Common-Sense View of the Tort of Bad Faith Refusal to Pay

To pass the first prong of the test–whether under a common-sense view the

---

[5]*Egelhoff v. Egelhoff* addressed only the preemption analysis, not the saving clause. The Court's findings of Congressional intent concerning preemption generally are nonetheless apposite to "the role of the saving clause in ERISA as a whole."

8

law "regulates insurance"–a state law must be "specifically directed" toward the insurance industry, and "not just have an impact on it."[6] Pilot Life, 481 U.S. at 50, 107 S.Ct. at 1554. To determine whether a law is "specifically directed" at the insurance industry, we look at whether the roots of the law are "firmly planted" in the general principles of the state's tort and contract law, or whether the law sets forth "a rule mandatory for insurance contracts, not a principle a court may pliably employ when the circumstances so warrant." Ward, 526 U.S. at 371, 119 S.Ct. at 1388; Pilot Life, 481 U.S. at 50, 107 S.Ct. at 1554; see also Corporate Health Ins., 215 F.3d at 538 ("A law is ['specifically directed toward the insurance industry'] when the state has developed a specific scheme governing insurance, as opposed to a flexible rule used in many legal contexts.").

Because there is virtually no distinction between the issue before us and that in Pilot Life, our analysis of the roots of Alabama's law is guided by Pilot Life and

---

[6]We note that the Sixth Circuit has recently suggested that only this first prong may be required:

> It must be reiterated and emphasized that the three McCarran-Ferguson factors are not required to be satisfied before a state law can be found to be a law regulating insurance. They are . . . nothing more than "checking points" or "guideposts." The basis test is whether, from a common sense view, the . . . laws in question regulate insurance.

Ky. Ass'n of Health Plans, Inc. v. Nichols, 227 F.3d 354, 372-73 (6th Cir. 2000). Because we find that the common-sense view does not support application of the saving clause, we do not need to address whether it alone would be sufficient.

its progeny. We have ruled, in light of the decision in <u>Pilot Life</u>, that Alabama's tort of bad faith refusal to pay benefits has "the same roots 'in the general principles of . . . tort and contract law' as was the case in [<u>Pilot Life</u>]." <u>Belasco v. W.K.P. Wilson & Sons, Inc.</u>, 833 F.2d 277, 281 (11th Cir. 1987) (quoting <u>Pilot Life</u>, 481 U.S. at 41, 107 S.Ct. 1549, 1554); <u>see also</u> <u>Amos v. Blue Cross-Blue Shield of Ala.</u>, 868 F.2d 430, 433 (11th Cir. 1989). This holding is binding upon us today.[7]

---

[7]Because of the binding precedent in this Circuit, we need not revisit the roots issue. Moreover, our own review of the Alabama case law does not prompt us to suggest reconsideration en banc of *Belasco*'s conclusion that the Alabama tort of bad faith has the same roots in the general principles of tort and contract law as was the case with the Mississippi tort of bad faith at issue in *Pilot Life*. In analyzing whether Mississippi's tort of bad faith failure to pay insurance benefits fell within the savings clause, the Court in *Pilot Life* held that although Mississippi "has identified its laws of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi tort and contract law." 481 U.S. at 50, 107 S.Ct. at 1554. In so holding, the Supreme Court pointed to Mississippi cases where the breach of contract was attended by some intentional wrong amounting to an independent tort. Our review of the Alabama cases indicates that the Alabama tort of bad faith refusal to pay insurance benefits has similar roots. Alabama's tort of bad faith refusal to pay insurance benefits was first recognized as a holding of the Alabama Supreme Court in *Chavers v. National Sec. Fire & Cas. Co.*, 405 So.2d 1 (1981). There, the court essentially adopted the reasoning of Justice Jones, specially concurring in *Vincent v. Blue Cross Blue Shield of Alabama*, 373 So.2d 1054 (1979). Moreover, in recognizing the tort, the *Chavers* court held:

> To hold otherwise would render meaningless the longstanding legal principle in this state which holds that every contract carries with it an implied in law duty of good faith and fair dealing.

405 So.2d at 6. The rationale of Justice Jones in *Vincent*—i.e., the rationale for the recognition of the tort by the Alabama Supreme Court in *Chavers*—clearly had roots in Alabama common law and relied upon old Alabama Supreme Court cases indicating that a tort, independent of the contract and constituting a breach of a duty implied by law and collateral to the contract, can give rise to an action on the case, i.e., a tort action. *Vincent*, 373 So.2d at 1057-58, (discussing and quoting dicta from *Mobile Life Ins. Co. v. Randall*, 74 Ala. 170 (1893), which was a case arising in the context of an employment contract where the court stated in dicta that a collateral duty can be implied in law arising "in light of great legal principles, which enter into and

10

## 2. The McCarran-Ferguson Factors

Next we look at the three factors used to determine if a state law regulates the "business of insurance" under the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015. These factors are "guideposts, not separate essential elements." Ward, 526 U.S. at 374, 119 S.Ct. at 1389 (quoting Cisneros v. UNUM Life Ins. Co., 134 F.3d 939, 946 (9th Cir. 1998)). No one of them is "necessarily determinative in itself," rather they are considerations that must be weighed. Ward, 526 U.S. at 373, 119 S.Ct. at 1389 (quoting Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129, 102 S.Ct. 3002, 3009 (1982)). There are three criteria to consider: (1) whether the rule at issue has the effect of transferring or spreading a policyholder's risk; (2) whether the rule is an integral part of the policy relationship between the insured and the insurer; and (3) whether the practice is limited to entities within the insurance

permeate all human transactions," thus implying "a proper regard for the rights of others"). Justice Jones concluded from the Alabama case law that: "It has long been the law of this state that every contract implies good faith and fair dealing between the parties." *Id.* at 1058. Thus, the roots of the Alabama tort of bad faith are found in the Alabama case law and common law indicating that under certain circumstances a separate and independent duty can arise in the context of a contract, a duty implied by law and separate and independent from any contractual term, which duty can give rise to a tort action separate and independent from any action on the contract. Although Alabama, like Mississippi, has apparently "identified its law of bad faith with the insurance industry," *Pilot Life*, 481 U.S. at 50, 107 S.Ct. at 1554, Alabama's tort of bad faith has roots in the Alabama common law very similar to the roots of the Mississippi tort as described in *Pilot Life*. Our decision not to suggest revisiting the *Belasco* decision is supported by the fact that the Alabama Supreme Court in *Seafarer's Welfare Plan v. Dixon*, 512 So.2d 53 (1987), concluded in light of *Pilot Life* that Alabama's tort of bad faith refusal to pay insurance benefits was preempted by ERISA, thus implicitly recognizing that Alabama's tort was similar to the Mississippi tort of bad faith which *Pilot Life* had held was preempted.

11

industry. Ward, 526 U.S. at 374-75, 119 S.Ct. at 1389-90; Pilot Life, 481 U.S. at 50-51, 107 S.Ct. 1554-55; Metropolitan Life, 471 U.S. at 743, 105 S.Ct. at 2391. The similarity between the cases means that our analysis is again guided by Pilot Life.

The first factor looks to whether the state law has the effect of transferring or spreading policyholder's risk. There is nothing that distinguishes Alabama's tort from Mississippi's law in this regard. Thus Pilot Life directs us to the conclusion that there is no spreading of policyholder risk. Pilot Life, 481 U.S. at 50, 107 S.Ct. at 1554.

Similarly, the connection to the insured-insurer relationship is "attenuated at best." Id. at 5051, 107 S.Ct. at 1554-55. The bad faith tort does not "define the terms of the relationship." Id. at 51, 107 S.Ct. at 1555. Rather, like the Mississippi law, "it declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages." Pilot Life, 481 U.S. at 51, 107 S.Ct. at 1555.

Finally, the third factor–whether the practice is limited to entities within the insurance industry–fails for the same reasons that the common-sense view of the tort fails to prove it "regulates insurance" and for the same reason the Mississippi

12

law failed to satisfy this factor. The tort of bad faith refusal to pay benefits "has developed from general principles of tort and contract law." Id.; see Belasco, 833 F.2d at 281.

Therefore, at most, the Alabama tort of bad faith refusal to pay benefits satisfies only one of the McCarran-Ferguson factors. Even recognizing that "[n]one of these criteria is necessarily determinative in itself," Ward, 526 U.S. at 373, 119 S.Ct. at 1389, it is significant that the Alabama tort of bad faith satisfies less than one of these factors. More importantly, given that our analysis is to be informed by the exclusivity of the ERISA civil enforcement scheme, there is no doubt that this is the proper outcome. Alabama's tort of bad faith refusal to pay benefits, like Mississippi's law, seeks a remedy for improper processing of claims that goes beyond the remedies and causes of actions authorized by ERISA. As in Pilot Life, the "most important[]" consideration here is the "clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive." Pilot Life, 481 U.S. at 57, 107 S.Ct. at 1558. The facts of this case are virtually identical to Pilot Life; we are bound to hold that Alabama's tort bad faith refusal to pay is not saved from preemption by ERISA's saving clause.

3. Eleventh Circuit Precedent

Our earlier cases also dictate this outcome. We have held on more than one

13

occasion, in precedent binding on this Circuit, that the saving clause does not apply to this tort.[8] Amos v. Blue Cross-Blue Shield of Ala., 868 F.2d 430 (11th Cir. 1989); Belasco, 833 F.2d at 277. We also noted in Amos that "any change in the law's course will have to charted by the Congress or the Supreme Court." 868 F.2d at 433.

The district court, however, followed a decision from the Northern District of Alabama, Hill v. Blue Cross Blue Shield of Alabama, 117 F.Supp.2d 1209 (N.D. Ala. 2000), which erroneously concluded that the Supreme Court decision in Ward was in conflict with our prior precedent. Reading footnotes 6 and 7 of Ward in tandem, the court in Hill concluded that the path was open to revisit the question of whether Alabama's tort of bad faith refusal to pay was specifically directed toward the insurance industry. We believe that the Hill court's rationale for revisiting the issue is flawed for several reasons. First, in addressing the extent to which the Alabama tort is limited to or identified with the insurance industry, the Hill court failed to examine the "roots" of the Alabama tort. The Hill court failed to recognize the binding precedent of Belasco, which held "the Alabama law of bad

---

[8]We note that the Alabama Supreme Court reached the same conclusion in light of *Pilot Life*. *Seafarer's Welfare Plan v. Dixon*, 512 So.2d 53 (Ala. 1987) (in light of *Pilot Life* and *Metropolitan Life* overturning earlier decision and holding that the tort of bad faith refusal to pay is preempted by ERISA); *see also Hood v. Prudential Ins. Co. of Am.*[Hood II], 522 So.2d 265 (Ala. 1988) (reversing earlier decision).

faith appears to us to have the same roots 'in the general principles of . . . tort and contract law' as was the case in [Pilot Life]." 833 F.2d at 281(quoting Pilot Life, 481 U.S. at 50, 107 S.Ct. at 1554). Also, the Hill court focused solely on the Alabama cases that have refused to generally extend the tort of bad faith to the area of contract law, and failed to examine the roots of the Alabama tort of bad faith which we held in Belasco to be similar to the roots of the Mississippi tort of bad faith involved in Pilot Life. See also note 7, supra. Second, the Hill court erroneously perceived footnote 7 in Ward as being in conflict with the Eleventh Circuit precedent involving the Alabama tort of bad faith. However, we see nothing in Ward that is inconsistent with our binding precedent, Belasco and Amos, or indeed with Pilot Life. In any event, it is clear from Ward that the language upon which the Hill court relied is dicta.[9] Indeed, the Ward opinion did

---

[9]The *Ward* language upon which *Hill* relied is as follows:

UNUM next contends that ERISA's civil enforcement provision, § 502(a), 29 U.S.C. § 1132(a), preempts any action for plan benefits brought under state rules such as notice-prejudice. Whatever the merits of UNUM's view of § 502(a)'s preemptive force,[7] the issue is not implicated here. Ward sued under § 502(a)(1)(B) "to recover benefits due . . . under the terms of the plan." The notice-prejudice rule supplied the relevant rule of decision for this § 502(a) suit. The case therefore does not raise the question whether § 502(a) provides the sole launching ground for an ERISA enforcement action.

FN. 7: We dicussed this issue in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). That case concerned Mississippi common law creating a cause of action for bad-faith breach of contract, law not specifically directed to the insurance industry and therefore not saved from ERISA

15

not discuss the congressional intent that ERISA's enforcement provisions be exclusive because the state law rule involved in <u>Ward</u> did not implicate the exclusivity of ERISA's enforcement scheme.

Finally, and most importantly, the analysis conducted by the <u>Hill</u> court was flawed because of its total failure to consider "the clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive." <u>Pilot Life</u>, 481 U.S. at 57, 107 S.Ct. at 1558. Unlike the state law rule at issue in <u>Ward</u>, the Alabama tort of bad faith at issue in <u>Hill</u> and at issue in this case does implicate the exclusivity of ERISA's enforcement provisions in precisely the same manner as in

---

preemption. In that context, the Solicitor General, for the United States as *amicus curiae*, urged the exclusivity of § 502(a), ERISA's civil enforcement provision, and observed that § 502(a) was modeled on the exclusive remedy provided by § 301 of the Labor Management Relations Act, 1947 (LMRA), 29 U.S.C. § 185. The Court agreed with the Solicitor General's submission. 481 U.S. at 52-56, 107 S.Ct. 1549.

In the instant case, the Solicitor General, for the United States as *amicus curiae*, has endeavored to qualify the argument advanced in *Pilot Life*. See Brief 20-25. Noting that "LMRA Section 301 does not contain any statutory exception analogous to ERISA's insurance savings provision," the Solicitor General now maintains that the discussion of § 502(a) in *Pilot Life* "does not in itself require that a state law that 'regulates insurance,' and so comes within the terms of the savings clause, is nevertheless preempted if it provides a state-law cause of action or remedy." Brief 25; see also *id*., at 23 ("[T]he insurance savings clause, on its face, saves state law conferring causes of action or affecting remedies that regulate insurance, just as it does state mandated-benefits laws."). We need not address the Solicitor General's current argument, for Ward has sued under § 502(a)(1)(B) for benefits due, and seeks only the application of saved state insurance law as a relevant rule of decision in his § 502(a) action.

526 U.S. at 376-77 & n.7, 119 S.Ct. at 1390-91 & n.7.

16

<u>Pilot Life</u>.

4. <u>Conclusion</u>

Guided by the Supreme Court precedent in <u>Pilot Life</u> and by our precedent in <u>Belasco</u>, we hold that the common-sense view of the Alabama tort at issue here is that it does not "regulate insurance." Indeed, there is virtually no distinction in this regard between the issue before us and that in <u>Pilot Life</u>. Similarly, with respect to the three <u>McCarran-Ferguson</u> factors, there is no material distinction between the instant case and <u>Pilot Life</u>. And most importantly, our analysis is informed by "the clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive." <u>Pilot Life</u>, 481 U.S. at 57, 107 S.Ct. at 1558. In this regard too, the instant case is indistinguishable from <u>Pilot Life</u>. Accordingly, we conclude, as did the Supreme Court in <u>Pilot Life</u>, that Gilbert's state law tort claim is not saved by the savings clause, and thus is preempted by ERISA.

B. <u>Sole Shareholder as "Beneficiary"</u>

Gilbert argues that because he is the sole shareholder of Winfield Monument, he cannot be a "beneficiary" of an ERISA plan, within the meaning of 29 U.S.C. § 1002(8). If he is correct, he then argues that the state law causes of

17

action related to his insurance claims would not be subject to ERISA preemption.

The issue of whether the policy claims of a business owner are subject to ERISA, has divided the Circuits.[10]  Compare <u>Sipma v. Mass. Cas. Ins. Co.</u>, 256 F.3d 1006 (10th Cir. 2001) (corporation is employer, thus shareholder owning 49% of business is an "employee" and thus a "participant" of the ERISA plan); <u>Vega v. Nat'l Life Ins. Servs., Inc.</u>, 188 F.3d 287 (5th Cir. 1999) (sole shareholder is "participant" so long as some other employee is also a beneficiary of the plan); <u>Wolk v. UNUM Life Ins. of Am.</u>, 186 F.3d 352 (3rd Cir. 1999) (former law partner is "beneficiary" under ERISA); <u>Robinson v. Linomaz</u>, 58 F.3d 365 (8th Cir. 1995) (sole shareholder is "beneficiary" of ERISA plan); <u>Peterson v. Am. Life & Health Ins. Co.</u>, 48 F.3d 404 (9th Cir. 1995) (business partner is "beneficiary" of ERISA plan); <u>Madonia v. Blue Cross & Blue Shield of Va.</u>, 11 F.3d 444 (4th Cir. 1993) (sole shareholder was employed by corporation and thus was a "participant" in ERISA plan), <u>with</u> <u>Agrawal v. Paul Revere Life Ins. Co.</u>, 205 F.3d 297 (6th Cir.

---

[10]The issue has arisen in a myriad of contexts, though the underlying issue remains the same.  The cases range from consideration of sole shareholders to business partners, and are divided between consideration of whether the owner may be a "participant" or whether he may be a "beneficiary." Some of the cases relate to pension plans, which may have different considerations than those that relate to insurance claims. *See Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1351 (11th Cir. 1998) (distinguishing insurance claims from pension funds on the basis that insurance claims are not paid out of "plan assets").  Because this case involves a health insurance claim, we need not explore whether the nature of the plan should affect whether a business owner may be a "beneficiary."

2000) (following earlier case law that sole shareholder/surgeon is neither a participant nor beneficiary and has no standing to sue under ERISA); Fugarino v. Hartford Life & Acc. Ins. Co., 969 F.2d 178 (6th Cir. 1992) (finding the health coverage of sole proprietor of a restaurant and his dependents not subject to ERISA, although coverage for other employees under the same group health plan was); Kwatcher v. Mass. Serv. Employees Pension Fund, 879 F.2d 957 (1st Cir. 1989) (sole shareholder was "employer," not "employee" of corporation and was thus barred from collecting a pension under the corporation's benefit plan); Giardono v. Jones, 867 F.2d 409 (7th Cir. 1989) (holding that ERISA's definition of "participant" does not include a former employee who became an employer and was allowed to continue purchasing plan coverage); Peckham v. Bd. of Trustees of Int'l Bhd. of Painters and Allied Trades Union, 653 F.2d 424 (10th Cir. 1981) (Pension Fund not arbitrary and capricious in ruling that sole proprietors have no dual-status as "employees," and cannot be eligible for employee pension benefit plans).

We find ourselves in agreement with the more recent line of decisions. We hold that a sole shareholder is a "beneficiary," within the meaning of 29 U.S.C. § 1002(8), when he is entitled to benefits from a benefits plan which otherwise qualifies as an ERISA plan.

Interpretation of a statutory provision begins with the words of the statute. CBS Inc. v. Primetime 24 Joint Venture, 245 F.3d 1217, 1222 (11th Cir. 2001); Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000) (en banc). When the statutory language is unambiguous, "judicial inquiry is complete." CBS Inc., 245 F.3d at 1222 (quoting Merritt v. Dillard Paper Co., 120 F.3d 1181, 1186 (11th Cir. 1997) (additional citations omitted)). The court need look no further. ERISA defines the term "beneficiary" as "a person designated . . . by the terms of an employee benefit plan, who is or may be entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Gilbert's health insurance policy included employees other than himself and his wife; thus it qualifies as an ERISA employee benefit plan. R.I at Tab 1, Ex. 1. Gilbert is designated in the insurance policy as a person entitled to health benefits. R.I at Tab 1, Ex. 1. Therefore, under the plain meaning of section 1002(8), Gilbert is a "beneficiary" of an ERISA plan.

Our previous caselaw is consistent with this outcome. In Engelhardt v. Paul Revere Life Ins. Co., we held that a physician/shareholder was a "beneficiary" in the corporation's disability plan. 139 F.3d 1346 (11th Cir. 1998). We recognize that Engelhardt does not control the outcome of this case because the plaintiff there was one of four shareholders of a professional corporation, not a sole shareholder. Id. at 1348. However, in that case, we did consider the effect of the anti-inurement

20

provision, which underlies the policy argument against holding a business owner

subject to ERISA. Our conclusions concerning the policy considerations embodied

in the anti-inurement provision are as instructive in the instant case as they were in

Engelhardt.

Gilbert argues that the Department of Labor regulation, 29 C.F.R. § 2510.3-

3(c)(1),[11] provides that sole shareholders are exempt from ERISA. His argument

fails, however, because this regulation has no relevance to the issue at hand. The

meaning of the regulation is clear from its plain language, and is further supported

_____

[11]29 C.F.R. § 2510.3-3 "Employee benefit plan." provides, in relevant part:

  (a) *General*. This section clarifies the definition in section 3(3) of the term "employee benefit plan" for purposes of title I of the Act and this chapter. It states a general principle which can be applied to a large class of plans to determine whether they constitute employee benefit plans within the meaning of section 3(3) of the Act. Under section 4(a) of the Act, only employee benefit plans within the meaning of section 3(3) are subject to title I.

  (b) *Plans without employees*. For purposes of title I of the Act and this chapter, the term "employee benefit plan" shall not include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan, as defined in paragraph (d) of this section . . . .

  (c) *Employees*. For purposes of this section:
  (1) An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse, and
  (2) A partner in a partnership and his or her spouse shall not be deemed to be employees with respect to the partnership.

by common sense.[12]

29 C.F.R. § 2510.3-3 defines the term "employee benefit plan."  29 C.F.R. §
2510.3-3(a).  The regulation "states a general principle which can be applied to a
large class of plans to determine whether they constitute employee benefit plans
within the meaning of section 3(3) of [ERISA]."  Id.  It lays out the test for
determining if a benefit plan is an ERISA plan; it does not speak to the separate
issue of who may or may not be a beneficiary or participant of a plan once it is
deemed an ERISA plan.  Subsection (c)(1) establishes only that a sole shareholder
and his spouse do not constitute "employees" for the purpose of determining if a
plan is covered by ERISA.  Because the Alta policy covers employees besides

---

[12]Alta also argues that our interpretation of the regulation is supported by opinion letters
from the Department of Labor.  We recognize that agency opinion letters interpreting regulations
are to be given deference "only when the language of the regulation is ambiguous." *Christensen
v. Harris County*, 529 U.S. 576, 588, 120 S.Ct. 1655, 1663 (2000).  Because we find there to be
no ambiguity in the regulation, no deference is accorded to Department of Labor opinion letters
concerning the regulation.  Nonetheless, we note that opinion letters from Department of Labor
do support our reading of the 29 C.F.R. § 2510.3-3.

In a 1992 opinion letter, the Department of Labor concluded that "[i]f . . . the benefit
program includes one or more common law employees as well as an individual described in §
2510.3-3(c), such program would be an employee benefit plan."  Letter from Robert J. Doyle,
Director of Regulations and Interpretations, Pension and Welfare Benefits Administration, U.S.
Dept. of Labor to Susan Katz Hoffman 2 (July 31, 1992).  As such, the plan is subject to the
claims procedure provisions of ERISA.  The opinion letter concludes that those provisions apply
"to any participant or beneficiary covered under the employee benefit plan, *including any
participant or beneficiary described in § 2510.3-3(c)*."  Id. (emphasis added). Thus, the letter
interprets 29 C.F.R. § 2510.3-3 to mean that an individual's status as sole shareholder would
foreclose ERISA application if he were the only named beneficiary of the plan, but his status has
no bearing on the application of ERISA if he is a named beneficiary of a plan otherwise subject
to ERISA.

Gilbert and his wife, this section has no bearing on this case.

This conclusion also comports with common sense. As the Fourth Circuit noted, "once a plan has been established, it would be anomalous to have those persons benefitting from it governed by two disparate sets of legal obligations." Madonia v. Blue Cross & Blue Shield of Va., 11 F.3d 444, 449-50 (4th Cir. 1993) (refusing to apply 29 C.F.R. § 2510.3-3 to the definition of "participant"). If we accepted Gilbert's reading of the regulation, then he and his wife would have a different set of rights and remedies then the other employees covered by the same plan.

Gilbert is a sole shareholder named in a policy which provides coverage to other employees. He is, therefore, a "beneficiary" of an ERISA plan, as contemplated by the statute. The district court correctly dismissed his state fraud and breach of contract claims as preempted by ERISA.

## III. CONCLUSION

For the reasons stated, we REVERSE the district court decision that Alabama's bad faith law is saved from preemption. We AFFIRM the district court determination that sole shareholders may be "beneficiaries" within the meaning of ERISA. This case is REMANDED to the district court with instructions to dismiss

the bad faith claim as preempted by ERISA.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.